## The Murray Company v. C. A. Putman.

Decided June 10, 1910.

**1.—Written Contract—Failure to Read—Insufficient Excuse.**

The law holds parties bound by a written contract, and in order to be relieved from its terms and provisions a party must show some legal excuse for failing to read and understand it before signing it; evidence considered and held insufficient to show fraud, accident or mistake in the execution of a contract concerning the purchase and operation of machinery, and insufficient to relieve the purchaser from compliance with the terms and stipulations therein contained.

**2.—Same—Breach—Loss of Profits.**

The seller of machinery bought for the purpose of ginning cotton for the public would be liable for the loss of profits by the purchaser by reason of the failure of the seller to properly place and arrange the machinery for operation, in accordance with his contract.

Appeal from the District Court of Navarro County. Tried below before Hon. H. B. Daviss.

*J. J. Eckford* and *McClelland & Prince,* for appellant.—The written contract sued on and introduced in evidence by appellee evidencing in itself a complete contract between the parties, and its express terms providing that no understanding, verbal or otherwise, recognized unless specified therein; and there being no allegations in appellee's petition which in law constitute allegations of either fraud, accident or mistake, it was error in the court, over objection of appellant, to permit the introduction of any evidence as to any prior or contemporaneous parol agreement to vary, contradict, alter, or add to the terms of said written agreement; and it was error in the court to refuse the special request of appellant to instruct the jury not to consider such evidence. Self v. King, 28 Texas, 552, 553; Hurt v. Wallace, 49 S. W., 676; Hawkins v. Hawkins, 50 Calif., 558.

*Richard Mays,* for appellee.

RAINEY, Chief Justice.—On July 15, 1907, C. A. Putman of Dawson, Navarro County, Texas, purchased some gin machinery from The Murray Company of Dallas, Texas, giving a written order therefor, which machinery was to be shipped on or about July 25, 1907. Said order contained, among others, the following stipulation, to wit: "Said machine is warranted to be good material, to perform well, if properly operated by competent persons. Upon starting, if the purchasers at any time within ten days are unable to make same operate well, telegraph or written notice, stating wherein it fails to conform to the warranty, is at once to be given by the purchasers to The Murray Company, Dallas, Texas (and not verbally to some of its traveling men), and reasonable time shall be given to The Murray Company to send a competent person to remedy the difficulty, the purchaser rendering all necessary and friendly assistance to The Murray Company, which reserves the right to replace any defective part or parts, but

such defective part or parts shall not condemn the machine to which it belongs; and if said machine can not be made to fulfill the warranty, and the fault is in the machine, it is to be returned to place where received, and then another, as soon as practicable, substituted therefor, which shall fulfill the warranty, or the amount of the purchase price credited on notes pro rata, or money paid thereon refunded pro rata, neither party in such case to have or make any claim against the other; and such failure shall in no way affect this contract, or the notes and trust deed in accordance therewith, for any of the articles named therein. Failure to make such trial, or give such notice, or use after ten days without such notice, shall be conclusive evidence of the fulfillment of the warranty. If The Murray Company shall, at the request of the purchasers, render assistance of any kind in operating said machinery or any part thereof, or in remedying any defects either before or after said ten days, said assistance shall in no case be deemed a waiver of or excuse for any failure of the purchasers to fully keep and perform the conditions of this warranty. When at the request of the purchasers a man is sent to operate the machinery, which is found to have been carelessly or improperly handled, The Murray Company putting the machinery in working order again, the expense incurred by The Murray Company shall be paid by said purchasers, if demanded."

Appellee brought this suit alleging, in effect, that appellant contracted to erect, construct and equip said machinery upon plaintiff's premises and put same in first-class condition on or before August 1, 1907, for the purpose of ginning cotton, but that said contract had been breached by appellant, in that said machinery did not reach his premises before August 14, 1907, and then the machinery was not erected during the season of 1907, and plaintiff thereby lost the ginning of that season's crop, to his damage $2,000. Appellant answered by general denial, and specially setting up the written order given by appellee and denying that it contracted to erect and put up said machinery for operation. Appellee amended his petition alleging, in substance, that said written order did not contain all the contract, but that the contract was in part written and part verbal and that the part in parol was not included in the written part by fraud, accident or mistake.

A trial before a jury resulted in a verdict and judgment for appellee, and appellant prosecutes this appeal.

The appellant assigns as error the admission of the testimony of the plaintiff, C. A. Putman and of W. H. Putman, "because such testimony undertook, by a prior or contemporaneous parol agreement, to vary, alter, contradict and add to the terms of the written contract between the parties sued on by plaintiff and introduced by plaintiff in evidence," and also in refusing to give a requested charge to the jury, in effect, to not consider any and all testimony as to any agreement other than the written agreement between the parties in evidence.

The effect of the parol testimony admitted, was to change, alter, and contradict the written order executed by the plaintiff. The plaintiff alleged that the contract was in part in writing and in part verbal, and that the verbal part was not included in the written part by fraud,

accident or mistake, and contends by reason of which the court properly admitted said testimony.

Plaintiff's testimony in reference to his signing the contract, which is corroborated by his son, is that "Mr. Ellison (the appellant's agent), drew up that written order and I signed it in duplicate and he left one copy with me. I didn't have my specks with me at the time I signed it, and I didn't read over all the fine print. Mr. Ellison just told me the substance of it and we agreed. He didn't read it over to me. We had already made the contract before he sat down to write out the contract. He did not tell me that there was anything in it that we had not agreed upon. We talked it over and then he drew up the contract. When I made this contract with Mr. Ellison, my son, W. H. Putman, was present. I can't read fine print at all without glasses. I don't claim to be bright. After we made the agreement Mr. Ellison pulled out that paper and did the writing. I had confidence in him at that time. I fully believed he would write down our agreement on that paper. He just told me what it amounted to and he didn't care for the mortgage on the machinery. My son and I were plowing in the field. We both stopped and he sat down on my cultivator during the time of this contract."

The written order executed by plaintiff and the one on which the machinery was sold to him by The Murray Company is a complete and entire contract, and it is presumed to contain the whole agreement of the parties. It stipulated that "No understanding, verbal or otherwise, recognized unless specified in this contract, which includes warranty as above shown." The rule is well settled that a contemporaneous parol agreement can not be set up to vary the terms of a written contract. Belcher v. Mulhall, 57 Texas, 17. In equity a written contract may be avoided by allegations and proof that fraud, accident or mistake entered into the making of a contract. But if it be conceded that the allegations of fraud, accident or mistake made by plaintiff are sufficient to admit proof on that issue, the question arises, does the evidence show such fraud, accident or mistake in the making of the contract in question that authorizes plaintiff to vary or alter its terms by parol evidence? We think not. While plaintiff stated, "I didn't have my specks with me at the time I signed it, and I didn't read over all the fine print. Mr. Ellison just told me the substance of it and we agreed. He didn't read it over to me. We had already made the contract before he sat down to write out the contract. He didn't tell me that there was anything in it that we had not agreed upon," we do not think this testimony shows sufficient grounds for admitting parol evidence to vary the contract. There was no relation of especial trust or confidence existing between him and Ellison, the appellant's agent, that warranted him in relying upon Ellison. His son was present, who could read, but he was not called upon to read the contract. No specific statement is shown to have been made by Ellison as to what the writing contained that was false and which induced him to sign it. Appellee held a copy of the order for several weeks, which he could have read, but he did not do so and during that time took no steps to repudiate the contract as written. The law holds parties bound by written contracts, and in order to be relieved

from its terms and provisions a party must show some legal excuse for failing to read and understand it before signing it. Hurt v. Wallace, 49 S. W., 676; Hawkins v. Hawkins, 50 Cal., 558. Other authorities might be cited, but this principle is so well settled that we deem it unnecessary.

Under the facts as shown by the record the court erred in not confining the jury to the consideration of the written contract as a basis for recovery. The written contract warranted the machinery "to perform well, if properly operated by competent persons." Under this clause if the machinery did not perform well and was properly operated, the plaintiff was entitled to recover such damages as naturally and proximately arose from the failure, if any, of the machinery to perform well. The contract provides for appellant giving such assistance to appellee, if requested, as was necessary in erecting and adjusting the machinery, so if properly operated it would perform well. The appellant was called on to assist and did undertake to comply with this provision of the contract, but failed. The machinery was bought for the purpose of ginning cotton for the public, and if there was loss of profits from failure to operate the machinery and such failure arose from the fault of appellant in not placing or arranging the machinery for proper operation, appellee was entitled to recover for such profits.

We deem it unnecessary to discuss the other assignments presented, as the views above expressed dispose of the most of them, and the issues will not probably arise on another trial, and if not disposed of we consider them without merit.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*