### INDEPENDENT SHOPE BRICK CO. v. DUGGER. (No. 284.)*

(Court of Civil Appeals of Texas. Waco. Jan. 21, 1926. Rehearing Denied March 4, 1926.)

**1. Principal and agent ⬦177(3)—Defendant, furnishing brick for building, held charged with knowledge of character of building and of consequences if brick was not as warranted, where agent was acquainted with facts.**

Where defendant's agent at time of negotiating sale of brick to plaintiff was on lot where home was to be constructed, and was shown plans and specifications, defendant was thereby charged with knowledge of character of building and probable consequences if brick furnished was not as warranted.

**2. Sales ⬦442(1).**

In action for damages for breach of warranty in sale of brick, cost of brick is merged in consequential damages recovered.

**3. Sales ⬦442(6, 7).**

Consequential damages may be recovered on breach of warranty in sale of personalty whether warranty be expressed or implied.

**4. Damages ⬦117.**

Measure of damages which will best compensate party for injury suffered from contract breach should be adopted.

**5. Sales ⬦442(2)—Contention that measure of damages for breach of warranty in sale of brick used in house is difference in market value of entire premises with and without defect held untenable; house having separate market value from land.**

In suit for damages for breach of warranty in sale of brick used in house, contention that measure of damages is difference in market value of entire premises with and without defect caused by defendant's breach, held untenable since house may have market value separate from land on which it is situated, notwithstanding that its continued use with land is contemplated.

**6. Sales ⬦442(2)—Measure of damages for breach of warranty in sale of brick used in house, based on difference in market value of house with defect and its intrinsic value without defect, held proper.**

In suit for damages for breach of warranty in sale of brick used in house, measure of damages based on difference in market value of house, exclusive of land, if brick had not been defective and intrinsic value of house with defect, it being found to have no market value, held proper.

**7. Evidence ⬦543(3)—Witness, with extensive experience in real estate business and familiar with market values, held qualified to testify as to value of brick house and lot and value of lot separately.**

Witness having extensive experience in real estate business in vicinity, and familiar with market value both of vacant lots and brick houses and with lots on which they were situated, held qualified to testify on question of market value of brick house and lot, and value of lot separately, though he was not thoroughly familiar with market value of house.

**8. Evidence ⬦568(7).**

Construction and weight to be given opinion evidence as to value of property are for jury.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Suit by W. L. Dugger against the Independent Shope Brick Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Sleeper, Boynton & Kendall and W. L. Eason, all of Waco, for appellant.

John McGlasson and Weatherby & Rogers, all of Waco, for appellee.

GALLAGHER, C. J. This is a suit instituted by W. L. Dugger, appellee herein, to recover of Independent Shope Brick Company, ap-

---

(281 S.W.)

pellant herein, damages alleged to have been suffered by reason of the failure of certain building brick to conform to the warranty of quality made in the sale of the same to him. The parties will be designated as in the trial court. There was a trial before a jury. The case was submitted on special issues and a verdict thereon duly returned. The court entered judgment on such verdict in favor of plaintiff against the defendant for the sum of $8,000, from which judgment defendant prosecutes this appeal.

Plaintiff, through certain contractors, was engaged in erecting a brick dwelling house in the city of Waco, to be used and occupied by him and his family as a residence. While work on the foundation was in progress, an agent of the defendant approached him and induced him to purchase for the outside wall a face brick manufactured by it. To induce plaintiff to purchase said brick, said agent warranted that said brick was waterproof; that is, that the face of the brick was absolutely waterproof, and that the body of the brick would absorb moisture enough, and only enough, to make a perfect mortar bond, and that a wall constructed of such brick would be the same as if it were solid concrete. Plaintiff explained to defendant's agent that he intended to construct an outer wall 4 inches thick of face brick and an inner wall 4 inches thick of common brick, with a 2-inch space for ventilation between such walls, and that he intended to tie said walls together with metal ties at proper intervals. Defendant's agent then informed plaintiff that defendant manufactured a special brick 10 inches long for use in such cases instead of metal ties, and that such brick was much better for such purpose. Said agent also guaranteed that said special brick would not conduct water to the inside of the house. Plaintiff relied on said warranties and purchased from defendant face brick for the outside walls of said building and said special brick for use in tying the outside and inner walls together, and the same were so used.

Plaintiff alleged that said brick so purchased were not waterproof, but that they, on the contrary, absorbed large quantities of water, and conducted the same through the inner wall into said house, and that such water, so conducted into said house, caused material damage to the same and destroyed the market value thereof and materially lessened its intrinsic value. He submitted evidence tending to sustain said allegations.

The defendant denied said allegations, and pleaded that, if said building was injured by dampness or water inside thereof, as alleged by plaintiff, such condition was not caused by any defect in its brick used in the construction of the walls thereof, but was caused by the use of defective mortar, by the improper laying of such mortar, and by lack of proper ventilation in such walls. Defendant further alleged that the dampness on the inside of said house so complained of could be remedied or prevented by properly pointing up the mortar joints and placing ventilators in said walls. Defendant submitted evidence tending to sustain its allegations.

The jury, in response to issues submitted to them, found that said brick absorbed large and unusual quantities of water, and carried the same to the inner walls of said house. The jury further found that the mortar used was not defective; that it was properly laid; that there was no lack of proper ventilation in said walls; and that the condition complained of could not be remedied by pointing the mortar joints or placing ventilators in the walls.

Plaintiff alleged that, if said brick had been of the quality warranted, his building when completed would have been of the reasonable market value of $13,000, but that by reason of the defects in said brick said building had no market value when completed, and had an intrinsic value of only $5,000, and that he had suffered damage in the sum of $8,000. He also alleged that to replace said defective brick with other brick of the quality warranted would require tearing said house down and rebuilding the same, and would cost far more than the damages so claimed by him. He submitted evidence tending to sustain said allegations. No other measure of damages was tendered by him. Defendant pleaded that there were numerous preparations made for the purpose of preventing dampness and water from penetrating through the walls of brick buildings to the inside of the same, that the proper application of such preparation would prevent such penetration, and that all the injury and damage complained of by plaintiff could be prevented thereby at an expense not exceeding $250.

The jury, in answer to issues submitted by the court, found that plaintiff's house, when completed, would have had a market value, exclusive of the land on which it was situated, of $13,000, if said brick had not conveyed water to the inner walls, that, as completed, it had no market value, and that its intrinsic value, exclusive of the land on which it was situated, was $5,000. The jury further found, in answer to a special issue submitted by the court at the request of the defendant, that plaintiff could not have repaired said house so as to prevent dampness from penetrating to the inner walls thereof without material damage to the building.

Defendant objected to the issues submitted as a basis for the measurement of plaintiff's damages, in due time and in proper manner. Based on such objections, it here contends that the proper measure of plaintiff's damages is the difference between the market value of the entire premises as they would have

been if said brick had been of the quality warranted and the market value of the entire premises with the house thereon as actually constructed, using said defective brick; or that the true measure of damages is the difference between the market value of the brick furnished by defendant and the value of such brick if they had been as warranted, with special damages in such additional sum as might be necessarily expended in remedying the defective condition of the building.

[1-3] The purchase price of the brick furnished by defendant is not involved in this case, and we may reasonably presume that such price had been paid before this controversy arose. When appellant's agent opened negotiations for the sale of said brick, he was on the lots where the building was to be erected and where the foundation therefor was being prepared. He was there shown the plans and specifications, and necessarily knew the kind and character of building to be erected and its location. Defendant was not only charged with such knowledge, but also with notice of the probable consequences if the brick furnished should not possess the qualities warranted. So far as the cost of said brick is concerned, it is merged in the consequential damages recovered, which damages doubtless exceed the entire cost of such brick. Consequential damages may be recovered on a breach of warranty in the sale of personal property, whether such warranty be express or implied. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280 et seq.; Aultman, Taylor & Co. v. Hefner, 2 S. W. 861, 67 Tex. 54, 59; Murray v. Putman, 130 S. W. 631, 633, 61 Tex. Civ. App. 517; D. M. Osborne & Co. v. Poindexter (Tex. Civ. App.) 34 S. W. 299, 301; Danner v. Fort Worth Implement Co., 45 S. W. 856, 18 Tex. Civ. App. 621; Gascoigne v. Carey Brick Co., 104 N. E. 734, 217 Mass. 302, Ann. Cas. 1917C, 336, 338.

[4] Defendant pleaded that the defects in said building could be remedied by application of a waterproof preparation at a small expense. Defendant also objected to the issues submitted by the court on the ground, in effect, that the proper measure of consequential damage suffered by plaintiff was such sum as it might be necessary to expend in remedying the defective condition of the building. We may assume, for the purpose of this opinion, that defendant's said plea raised such issue as effectively as if the same had been pleaded in the alternative by plaintiff. Grimes v. Hagood, 19 Tex. 246, 249, 250; Thomas v. Bonnie Bros., 2 S. W. 724, 66 Tex. 635, 637; Pope v. K. C. & M. O. Ry. Co., 207 S. W. 514, 109 Tex. 311, 322, and cases there cited; Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com. App.) 254 S. W. 935, 936, 937, and cases there cited. We think, however, that the finding of the jury in response to defendant's requested issue that the building could not be repaired so as to prevent damp-

ness from penetrating the inner walls without material damage to such building, precludes any insistence on the part of defendant that such consequential damages should be measured only by the sum necessary to be expended in remedying the defect in the walls complained of by plaintiff and found by the jury to exist. The purpose in every case is to compensate the complaining party for the injury suffered, and the measure of damages which will best accomplish this purpose should be adopted. What means will best accomplish such purpose in a given case depends on the facts and circumstances in evidence therein. Pacific Express Co. v. Lasker Real Estate Ass'n, 16 S. W. 792, 81 Tex. 81, 83. Plaintiff would not have been fully compensated for the injury suffered by the sum expended in remedying the defect in the walls if the means employed materially damaged the building as a whole.

[5] Defendant's remaining contention on this point is that the only proper measure of damages under the authorities in this state was the difference in market value of the entire premises with and without the defect found to exist in the walls of said building. The gist of this insistence is that the value of the building as a whole could not be accurately ascertained separate and apart from the value of the land on which it was situated. The ownership of the house and of the land on which it was situated were both in plaintiff. Nothing in the evidence introduced, the issues submitted, or the findings of the jury in response thereto, indicates that removal of the house from the land on which it was situated was considered. Its continued use in connecction with such land was clearly contemplated. A similar issue was before our Supreme Court in the case of Land Mortgage Bank v. Quanah Hotel Co., 34 S. W. 730, 89 Tex. 332, 339. In that case one party had a prior lien on the lot and another party a prior lien on the building erected thereon. Foreclosure of said respective liens was sought. The court said the building could not be properly separated from the lots, and that, in order to realize the benefits of the liens, the whole property, land and building together, had to be sold; that it might be converted into money and the proceeds divided. As a basis for such division, the court held that the fair market value of the lot at the time without the house should be ascertained, and also that the fair market value of the house at the time, considering the purposes for which it was to be used and all the surrounding circumstances, should likewise be ascertained, and the proceeds of the sale of the whole property divided in proportion to such respective values. This case expressly recognizes that a house may have a market value separate and apart from the land on which it is situated, notwithstanding its continued use in connection with such land is

contemplated. See, also, in this connection, 9 C. J. p. 810, § 149; Waco Cement Stone Works v. Smith (Tex. Civ. App.) 162 S. W. 1158, 1159; Texas Kalamazoo Silo Co. v. Alley (Tex. Civ. App.) 191 S. W. 774; Chicago, R. I. & G. R. Co. v. Trinity Valley Produce Co. (Tex. Civ. App.) 269 S. W. 1109, 1110; Jennings v. Willer (Tex. Civ. App.) 32 S. W. 24; Houston & T. C. R. Co. v. Smith (Tex. Civ. App.) 46 S. W. 1047; Fleming v. Lunsford, 50 So. 921, 923, 163 Ala. 540; Lincoln Stone & Supply Co. v. Ludwig, 144 N. W. 780, 785, 94 Neb. 722; Small v. Lee & Bros., 61 S. E. 831, 4 Ga. App. 395; White v. McLaren, 24 N. E. 911, 151 Mass. 553; Pinches v. Swedish Evangelical Lutheran Church, 10 A. 264, 55 Conn. 183; Elwood Planing Mill Co. v. Harting, 52 N. E. 621, 21 Ind. App. 408; Wheaton v. Lund, 63 N. W. 251, 61 Minn. 94; Moulton v. McOwen, 103 Mass. 587; Taulbee v. Moore, 51 S. W. 564, 106 Ky. 749; Eaton v. Gladwell, 80 N. W. 292, 293, 121 Mich. 444.

We do not think the rule of damages applied by the court in this case is inhibited by Pacific Express Co. v. Lasker Real Estate Ass'n, supra, relied on by defendant. In that case a house was standing on certain land. Neither how long it had stood on said land nor its state of repair was shown. It was partially destroyed by fire. The trial court held that the measure of the damages to which the owner was entitled was the amount necessary to restore the building to its condition immediately preceding the fire. The Supreme Court held that such measure of damages was not the proper one, and called attention to the fact that such measure did not take into account the fact that the reconstructed building would probably be more valuable than the one destroyed, nor whether the value of the building at the time it was injured was impaired by lack of adaptability to its location and surroundings. The court held in that case that the house injured and destroyed should be treated as a part of the land on which it was situated, and the damage measured by the difference in value of the land immediately before and immediately after the fire. In that case the house constituted a part of the freehold before the injury was inflicted. An injury thereto by a stranger was an injury to the freehold, and was properly treated as such. We do not think that the learned jurist who wrote the opinion in that case intended to lay down as a universal rule that a house must under all circumstances and for all purposes be considered a part of the land on which it stands, especially as to issues growing out of contracts connected with the construction thereof. Evidently the Supreme Court did not so construe said opinion when it decided the case of Land Mortgage Bank v. Quanah Hotel Company, supra. Neither did the Courts of Civil Appeals so construe it in the cases above cited. Damage done to the freehold by the destruction of buildings thereon has been measured by the value of such buildings without reference to the land on which the same were situated. Fort Worth & D. C. R. Co. v. Arthur, 124 S. W. 213, 214, 215, 58 Tex. Civ. App. 163, (writ refused); Chicago, R. I. & G. R. Co. v. Trinity Valley Produce Co. (Tex. Civ. App.) 269 S. W. 1109, 1110.

[6] If the measure of damages contended for by defendant were the only one permissible under our authorities, the injury suffered from the destruction of a small barn or servant's house on 1,000-acre farm would have to be proved by showing the value of the farm as a whole immediately before and immediately after such destruction. The cause of action asserted in this case did not arise out of an injury to the freehold as such. It arose out of a contract made before the building was erected and while the foundation was being constructed. Such contract was made with reference to the identical building intended to be erected. The kind of building was known to both parties, and it was contemplated that it would be erected on that identical site. That the house to be erected would in itself be of less value if defective brick were used in the construction of its walls must be reasonably supposed to have been within contemplation of both parties. The value of the house and lot together and the value of each separately were shown by the evidence. The jury, after hearing the evidence, made the findings above recited. We do not think the defendant has any lawful ground of complaint of the measure of damages applied by the trial court in this case, and overrule his contentions here under consideration.

[7, 8] Plaintiff's witness Craven was permitted, over objection of defendant, to testify that he figured the market value of the house and lots at $15,000, if the walls did not saturate and convey water to the inside of the house, and that the market value of the lots was $2,500, and to get the value of the improvements you subtract the value of the latter from $15,000, which would give $12,500. The substance of defendant's objection to said evidence was that the witness was not shown to be qualified, and that the method used by the witness in arriving at the market value was improper. On the subject of his knowledge of market values, the witness testified that he was actively engaged in the real estate business in Waco, and had been for 15 years; that he was acquainted with the market value of brick houses; that he knew the value of lots, and that he knew the value of such houses independent of the lot or lots upon which they were situated; that such knowledge was based on his experience in selling property and on sales made by others; that he had never sold such a house independent of the lot, and that the lot always went with it; that he was not a

contractor, and did not know on what basis to figure the market value of the house without the lot; that he did not think that the house without the lot had any market value; that he knew the market value of the lots on which plaintiff's house was situated exclusive of the house, and that he knew the market value of the house and lot as it stood if the walls did not saturate and convey water to the inside of the house. His testimony, complained of by defendant, followed immediately. The witness, on cross-examination, testified to matters tending in some measure to indicate that he was not thoroughly familiar with the market value of said house. Defendant thereupon moved the court to exclude all the testimony of the witness on the question of value, and the court overruled the motion.

Viewing the testimony of the witness as a whole, we think, when the witness said that he did not know on what basis to figure the market value of the house without the lot, and he did not think it had a market value independent of the lot, he was considering the value of the house without the right to have it remain on the lot and to continue to use and occupy it in connection therewith. No such issue was involved in this case. The continued use of the house and lots together was clearly contemplated. The issue to be determined was the market value, under such circumstances, of the house, as distinguished from or exclusive of the market value of the lots on which it was situated. That a house has such value is held by the Supreme Court in Land Mortgage Bank v. Quanah Hotel Company, supra. We are not prepared to say as a matter of law that market value cannot in such cases as this be determined by deducting the market value of the lots upon which such house is situated from the market value of the premises as a whole. This is only one way of estimating such market value. The witness testified to extensive experience in the real estate business and familiarity with market values, both of vacant lots and brick houses with the lots on which they were situated. He also testified that he knew the market value of such houses exclusive of the value of the lots on which they were situated. The proper construction of his testimony and the weight to be given the same were questions for the jury. The trial court in his discretion admitted the testimony complained of, and refused to exclude the same after hearing the cross-examination of the witness. We do not believe he erred in doing so. Rogers & Adams v. Lancaster (Tex. Com. App.) 248 S. W. 660, and authorities there cited; Houston Belt & Terminal Ry. Co. v. Vogel (Tex. Civ. App.) 179 S. W. 268 (writ refused); Davis v. Fain (Tex. Civ. App.) 152 S. W. 218, 219; Gulf, C. & S. F. R. Co. v.

Morris (Tex. Com. App.) 250 S. W. 1017, 1018; Byrd Irr. Co. v. Smyth (Tex. Civ. App.) 157 S. W. 260, 262; Pecos & N. T. R. Co. v. Porter (Tex. Civ. App.) 156 S. W. 267; 1 Wigmore on Evidence (2d Ed.) 1139, § 714; 22 Corpus Juris, p. 587, § 686.

Defendant complains of the action of the court in admitting in evidence certain other testimony on the subject of value from the same witness, and also testimony on such subject from the plaintiff. We have examined the same, and, on the authorities above cited, hold that the court did not err in admitting such testimony.

Defendant contends that certain findings of the jury are without support in the evidence. We have examined the same and are unable to agree with such contention.

The judgment of the trial court is affirmed.