## THOMAS et ux. v. POSTAL TELEGRAPH-CABLE CO. et al.
### No. 1715—6256.

Commission of Appeals of Texas, Section A.
Nov. 28, 1933.

E. W. Napier, of Wichita Falls, for plaintiffs in error.

Bullington, Humphrey & King, of Wichita Falls, for defendants in error.

CRITZ, Judge.

This suit was instituted in the district court of Wichita county, Tex., by Mr. and Mrs. J. C. Thomas, against Postal Telegraph-Cable Company of Wichita Falls and Southern Railroad Company to recover damages for the death of their 16 year old son, alleged to have resulted from the negligence of such companies. The case was tried in the district court with a jury. At the close of the testimony, the court instructed a verdict for the defendant companies. The verdict was returned as directed, and judgment entered accordingly. On appeal by the Thomases, this judgment was affirmed by the Court of Civil Appeals at Fort Worth in an opinion by Judge Conner. The late Judge Buck dissented. 48 S.W.(2d) 422. The Thomases bring error.

■■ Since the verdict was instructed in the district court for the defendant companies, we must view the evidence in its most favorable light for the Thomases. If there is any evidence in the record of probative force which would justify a finding in favor of the Thomases, the judgments of the two lower courts should be reversed and the cause remanded to the district court for a new trial. It therefore becomes necessary for us to review the facts.

■ It appears that Elmer Thomas, the 16 year old son of Mr. and Mrs. Thomas, was employed by these two companies. All employees of such companies worked under an agreement with their employers to the effect that, in the event of sickness or injury from any cause, the companies would administer a certain fund to be used for the purpose of furnishing all necessary and proper medical and hospital services. Elmer Thomas, while employed by the two companies, became sick or infected with tonsillitis, which at first only temporarily incapacitated him from work. In accordance with the agreement above mentioned, due application was made to Dr. R. C. Smith, chief surgeon of the companies, who was in charge of its medical staff for the purpose of carrying out the agreement between the companies and their employees. It appears that Dr. Smith treated Elmer from about December 11, 1928, until about March 8, 1929, when he stated that he was unable to do anything further for him, and expressed the opinion that he would die. Elmer was never operated on or his tonsils removed.

The Thomases contend that Dr. Smith was guilty of negligence in failing to remove Elmer's affected tonsils and in failing to furnish hospital facilities and in other ways, as the result of which the boy died on July 17, 1929. For the purpose of this opinion we will treat the case as though the record raises the fact question as to Dr. Smith's negligence. In justice to Dr. Smith, however, we wish to say that we do not hold him negligent as a matter of law.

The vital question in this case, as presented to us, is not whether Dr. Smith was negligent in treating this boy, but whether the companies were negligent in administering the above-mentioned fund which we will now discuss.

The undisputed evidence shows that the railroad company, and the telegraph company occupied the same offices, and that the operative business of both were conducted by the railroad company. The two companies had an arrangement between themselves and their employees by which they collected from such employees a certain percentage of their wages or salaries. The percentage collected from Elmer amounted to 50 cents per month. This fund, under the plan, was to be used to pay the doctor's bills and hospital fees for

employees who became sick or got injured while employed by such companies. It appears that the question of negligence of the companies did not enter into the rights of the sick or injured employee, and neither was it important whether the sickness or injury resulted from the employment.

It was further shown that the fund was actually administered by the railroad company. As so administered, no separate hospital association was maintained. The railroad company employed Dr. Smith as its chief surgeon, and he had other doctors working under him. When an employee became sick, he was entitled to go to Dr. Smith and demand the services of himself and the other doctors under him. At the end of the month Dr. Smith presented the railroad company with his bill for attention to the employees of the two companies. The railroad company paid such bills at the rates provided in the contract between it and Dr. Smith.

There is no evidence in the record showing or tending to show that these companies were negligent in selecting the medical staff to administer to the sick and injured employees. Also we presume that all parties interested understood the way and manner in which the fund was being administered.

It is further undisputed that the fund collected by these companies had never paid enough to discharge the obligations against it. Each month the company had to pay out more than it took in. This had always been the case. It does not appear what would have been done with a surplus, had there been any, and from the record we are justified in concluding that the companies never even considered the question of a surplus, because there was no reasonable probability that such contingency would ever happen. In other words, the fund they administered had an absolute loss, and there was no reasonable probability that conditions in such respect would ever change. Further, as we understand this record, when an employee became sick or injured, he had the absolute right to demand the services of the medical staff employed by the company. In this regard he did not have to get the consent of the company.

We here refer to the opinion of the Court of Civil Appeals for a more detailed statement of the evidence.

In our opinion, under the above record, these companies are not liable in this case even conceding the negligence of Dr. Smith.

It is the settled law that, if the fund was such that its use contemplated a charity, and the companies had no purpose to be served in connection with their own business by administering it, then they were only required to use ordinary care in the selection of the means of administration. Texas Central R.

Co. v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206.

In the Zumwalt Case, supra, the railroad company collected certain amounts each month from its employees to be applied to a fund for the care of such of them as became injured or sick. The company entered into a contract with Dr. Webb, by the terms of which he agreed to carry out the purposes of the fund in consideration of the payment to him of the entire proceeds thereof.

Zumwalt, while working for the company as a boiler maker, got a small particle of iron in his eye. Dr. Webb removed it, and in so doing he acted negligently by using an instrument not properly disinfected or sterilized, and, as the result of such negligence, the eye became infected, necessitating the removal of the eyeball.

Under the above facts, our Supreme Court held that the railroad company was administering a charity fund, and, since it was not negligent in selecting Dr. Webb, it was not liable. In this connection the court held that one administering a charity fund is only required to use ordinary care in selecting the means of such administration. In that case it was held that the company was only required to use ordinary care in selecting the doctor as a means by which to carry out the scheme inaugurated.

When we come to consider the facts in the case at bar, we are compelled to the conclusion that the majority of the Court of Civil Appeals was correct in its ruling that this fund was nothing but a charity. As already stated there is nothing in this record to show that the companies were negligent in selecting the doctor, or doctors, employed to administer to their sick and injured employees. The companies administered the fund at an absolute loss, and without any reasonable expectation of it ever even paying expenses, much less of it ever showing a profit. Finally the sick or injured employees were entitled to the services of such doctors regardless of how they became sick or injured and without obtaining the consent of the company. Certainly, if the fund in the Zumwalt Case was a charity, much more so is this fund a charity.

Counsel for the Thomases earnestly contend that this case is ruled by the holding of the Court of Civil Appeals in Texas & Pacific Coal Co. v. Connaughten, 20 Tex. Civ. App. 642, 50 S. W. 173 (writ refused). We think the facts of that case are essentially different from the facts of this case. In the Connaughten Case the opinion shows that the coal company collected 50 cents per month from each of its employees. In consideration of the payment of such fee, the company obligated itself to furnish such employees with medical attention and hospital services when sick or injured. The officers of the company directly administered the fund, and only gave

the employees such medical attention and hospital services as such officers determined proper under the circumstances. The fund was administered at a considerable profit to the company, and it regarded the fund as its own. Clearly the facts of that case, do not show a charity.

We recommend that the judgment of the Court of Civil Appeals which affirms the judgment of the district court be affirmed.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.