## WEITZMAN et al. v. ADAMS.

### No. 5148.

Court of Civil Appeals of Texas. Amarillo.

April 15, 1940.

K. H. Dally and Jos. H. Aynesworth, both of Borger, for appellants.

J. W. Spivey, Jr., of Borger, and W. L. McConnell and Curtis Douglass, both of Panhandle, for appellee.

FOLLEY, Justice.

On December 26, 1937, the appellee, Frank Adams, was the owner of fifty acres of land in Jasper County, Texas, except for a one-third interest in the mineral rights theretofore disposed of by him. The appellants, Max Weitzman and wife, Dora Weitzman, were the owners of Lot 19 in Block 16 in the town of Borger, Texas. The appellee was engaged in operating a hot tamale and hamburger stand in Borger. He was desirous of buying a building and placing the same upon a vacant lot where he might continue to pursue his business. He approached the appellants upon the subject and in a room of the hotel operated by the appellants in Borger made an oral argeement with them. The exact terms of such agreement are in dispute and this controversy forms the basis of this suit.

On January 3, 1938, a written contract was entered into between the appellee and the appellants wherein the appellants agreed to loan the appellee $250 with which to purchase, move and equip the building, and to allow him to move such building upon their vacant lot. The appellee agreed in such written contract to execute and deliver to appellants his note for $250 payable nine months after date; to execute a deed of trust upon the fifty acres of land in Jasper County to secure such note; and to further secure the debt by executing a mineral deed conveying two-thirds of the mineral rights in such land. It was further agreed that when the debt was paid by the appellee the building should become his property but he agreed to pay the appellants $15 per month ground rental for the lot upon which the building was to stand.

Simultaneously with the execution of this contract, the appellee executed and delivered to the appellants a note for $250, a deed of trust securing same, and a mineral deed, each in keeping with the terms of the contract except there was no provision in the mineral deed to the effect that it was for the purpose of security only. There was no stipulation in the contract, however, that such mineral deed should be placed in escrow pending the payment of the debt, and the appellants forthwith placed it together with the deed of trust, of record in Jasper County, Tex. The appellants did not advance to appellee the full $250 in money at the time of the execution of these instruments, but it is admitted that they did advance appellee money along as needed by him. The testimony, however, was controverted as to the amount of money or supplies so advanced. The appellant, Max Weitzman, testified that approximately $584.73 was advanced either in cash or expended for labor, material and supplies. The appellee admitted receiving some $281.10 of this amount either in cash or its equivalent, and further admitted that other sums were possibly expended for his benefit but he did not know the exact amount of such expenditures.

Immediately upon the execution of the above instruments the appellee purchased a building for $50, which sum was furnished by the appellants, moved the same upon the appellants' lot and began to improve and equip it suitable to his business requirements. On January 10, 1938, apparently needing more money than had been anticipated, the appellee executed another note payable to the appellants in the sum of $150, due in one year after date, and also executed a second lien deed of trust upon the above land to secure such note.

On May 20, 1938, the appellee filed this suit against the appellants and Abe Evin, trustee in each of the two deeds of trust, alleging that he was a negro, uneducated, unlearned and that he could hardly read and write; that the appellants devised a scheme to acquire title and possession of his land; that they took advantage of his illiteracy and incapacity and by false representations induced him to sign the contract, one or more deeds of trust, a mineral deed and one or more promissory notes; that the appellants told him they would loan him $250 and place such sum at his disposal in the Panhandle State Bank in Borger; that no such deposit was made by the appellants;

that the appellants represented they would allow the appellee to repay the loan in monthly payments of $15 each but that the instruments he executed did not so provide; that the agreement between the parties was that the appellee was to execute for security purposes only a mineral deed for an undivided one-third interest in the minerals of appellee's land but that the instrument he executed conveyed an undivided two-thirds interest in such minerals; that the appellants represented to him that upon payment of the debt they would return the mineral deed to him; and that appellee did not agree to execute the deeds of trust upon his land and he was ignorant of the contents of such instruments. The appellee offered to "do such equity as the court may decree" and prayed that "said contract, deed of trust and mineral deed be adjudged to be void and of no effect, that each of said instruments be ordered to be delivered up to plaintiff (appellee) to be cancelled * * *".

The appellants filed a general demurrer and general denial and specifically denied that they were guilty of fraud. They further alleged by way of cross-action that the appellee was indebted to them in the sum of $584.73 for money and supplies furnished to the appellee by the appellants for repairs and improvements on the building and asked for a judgment in such amount together with past due rentals on the property, interest and attorney's fees and for foreclosure of their alleged liens under the deeds of trust and mineral deed.

The cause was submitted to the court without a jury and the court rendered the following judgment: That the mineral deed was cancelled and declared void; that the $250 note and deed of trust securing the same were cancelled and decreed void; that the $150 note and deed of trust securing it were decreed cancelled and void; that all liens, encumbrances or obligations growing out of any of the foresaid instruments were null and void and of no binding force and effect; and that the appellants have judgment against the appellee for $109 and have title and possession of the building located on appellants' lot. From this judgment Max · Weitzman and wife, Dora Weitzman, have appealed.

The appellee has not afforded us the benefit of a brief, and we are therefore privileged to accept appellants' statement of the case as true and correct. The appellants assert that the facts of this case are

insufficient to constitute fraud under the pleadings. From the resume of the appellee's pleadings above set out it is apparent that a most liberal construction must be placed upon such allegations before it could be said that a case of fraud has even been pleaded. Most of the allegations of the appellee refer to a purported breach of the agreement after the same was entered into rather than fraudulent representations made to procure such agreement. We call attention to such deficiency in the pleadings mainly in view of another trial, since we are of the opinion the case must be reversed upon other grounds.

We think the testimony is wholly insufficient to warrant a cancellation of any of the instruments executed on January 3, 1938. By the admission in the testimony of the appellee, and by the testimony as a whole, all of the negotiations and terms of the agreement transpired prior to the preparation and execution of these instruments. The negotiations began on December 26, 1937, and culminated in the execution of the written instruments on January 3, 1938. The appellee testified that after the details of the agreement had been worked out the appellant, Max Weitzman, went to the office of J. W. Spivey, an attorney at Borger, for the purpose of having the latter prepare the papers. Weitzman's testimony was that he and the appellee went together to such attorney and had the papers prepared in the latter's office. The testimony of the attorney, J. W. Spivey, corroborated that of the appellee to the effect that according to his best recollection Weitzman came up to his office alone and told the attorney how he wanted the instruments drawn. At any rate, the testimony of the appellee, of Weitzman and of the attorney was to the effect that at the time the instruments were executed nothing was said about the contents of the instruments, that the appellee did not read them and did not ask that they be read or explained to him. The appellee merely signed them without asking questions concerning them. Nor is there any testimony of any probative force to the effect that Weitzman or anyone else at any time prior to appellee's coming to the attorney's office revealed to appellee the exact contents of the instruments or made any representations, false or otherwise, concerning the $250 note or the deed of trust securing the same. The only semblance of any testimony on this matter was from the appellee that he understood that the min-

eral deed was for only a one-third interest in the minerals; that this was his understanding when the papers were signed; that this was what Max and Dora Weitzman told him; and that he relied upon such statements and would not otherwise have signed the papers. Although the appellee was not cross-examined upon this bit of testimony, in view of the other evidence in this connection, we think it is obvious the appellee was thus referring to representations made to him in the prior oral negotiations leading up to the written contract. Particularly is this true since Mrs. Weitzman was not present at the time the papers were prepared or executed and the further fact that the appellee stated elsewhere that neither Mr. Spivey nor Mr. Weitzman explained to him what was in the papers or made any representations as to what they contained.

The appellee testified he could not read very well, but it was shown by the testimony that he had some little ability to read. Granting that he was unable to read and understand such instruments, he did not call such matter to the attention of either Weitzman or the attorney. Spivey testified that if the appellee had requested him to read the instruments he would have done so and would have read them correctly. He further testified that Weitzman did not make any statements at the time the papers were signed which were contrary to the provisions of any of the instruments. Therefore, the proof fails to show any misrepresentations were made at the time the papers were executed nor was there any showing of any fraud or imposition to prevent the appellee from being advised as to their contents.

In the case of Pioneer Building & Loan Ass'n v. Johnston et al., Tex.Civ.App., 117 S.W.2d 556, 557, writ of error dismissed, the appellee therein sought to cancel an obligation he had given on the theory that before the execution of the instruments in connection therewith he had been informed that the rate of interest charged by the appellant therein was to be 7½% per annum. The contract he later signed provided for 9%. In discussing the issue of fraud thus presented, Justice Alexander, of the Waco Court of Civil Appeals, in the course of the opinion in that case said: "It will be noted that Johnston's testimony related wholly to a representation made to him in the prior negotiations and that he did not testify to any misrepresentation having been made at

the time of entering into the contract. In fact, the jury did not find any misrepresentation was made by the loan company as to the contents of the written instrument signed by Johnston, but merely found that prior to the execution thereof the loan company had misrepresented the interest charged under its plan of operation. There was no proof offered as to any misrepresentations having been made at the time the loan papers were signed. In fact, it was not contended either in the pleadings or in the evidence that the contents of the document executed by Johnston were misrepresented or that any fraud or imposition was resorted to to prevent his being advised as to the contents of the contract. The above evidence, in our opinion, was insufficient to raise an issue authorizing the setting aside of the contract on account of fraud. Whatever oral negotiations were had between the parties at the first conference were presumed to have been waived or embodied in the written contract when finally executed by Johnston. In the absence of proof of fraud misleading Johnston as to the contents of the written contract actually executed by him, and in the absence of proof of any conduct on the part of the loan company, or its representatives, that prevented Johnston from informing himself as to the contents of such instruments, he is presumed to have known the contents thereof and therefore is not entitled to have such instruments cancelled."

In the case of Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 557, relative to the duty of one signing a contract to read or have the same read to him and of the effect of his failure to do so, Commissioner Smedley, speaking for the Commission of Appeals, said: "Several of the workmen were not able to read or write and signed by mark attested by Treloar, who neither read nor explained the assignment to them. There is no evidence that they asked for a reading or explanation or that anything was done to mislead or to conceal the contents of the instrument from them. Under such circumstances, they were bound by the terms of the instrument as fully as were those who could, and did not, read it."

■ In view of the above holdings and other authorities on the subject, it is our opinion that the evidence in this case was insufficient to warrant the cancellation of the instruments dated January 3, 1938. 7 Tex. Jur. 909; Distributors Inv. Co. et al. v.

Patton, 130 Tex. 449, 110 S.W.2d 47; Wheeler v. Holloway, Tex.Com.App., 276 S.W. 653; Parker et al. v. Schrimsher et al., Tex.Civ.App., 172 S.W. 165, writ refused; Cassel v. West, Tex.Civ.App., 98 S.W.2d 437, writ refused; Duncan v. Robertson et al., 129 Tex. 637, 105 S.W.2d 214; Kasch v. Farmers' Gin Co., Tex.Com.App., 3 S.W.2d 72; Murray Co. v. Putman, 61 Tex.Civ.App. 517, 130 S.W. 631; Cockerell v. Haynes et al., Tex.Civ.App., 255 S.W. 494.

The testimony is equally deficient as to the representations made at the time the instruments of January 10, 1938, were executed. In this connection the appellee testified that Weitzman told him that these papers were "some more of those papers that belonged to that first contract that we drawed up, a mineral deed", but it was not shown that Weitzman otherwise informed him of their contents. Just what definite information this conveyed to the appellee we are unable to determine. There was no other testimony as to any representations made to the appellee with reference to these particular instruments and we therefore are of the opinion the testimony thus offered was insufficient to show fraud. Wilson v. Jones, Tex.Com.App., 45 S.W.2d 572.

The judgment is reversed and the cause remanded.