Robert C. LOCKE et ux., Appellants,

v.

J. W. THIGPEN et al., Appellees.

No. 13784.

Court of Civil Appeals of Texas.

Houston.

Dec. 7, 1961.

Rehearing Denied Jan. 11, 1962.

Second Motion for Rehearing Denied
Feb. 1, 1962.

Dougal C. Pope, Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, B. J. Bradshaw, Houston, for appellees.

WERLEIN, Justice.

This is an appeal by appellants, plaintiffs in the trial court, from a judgment instructing a verdict in favor of appellee, J. W. Thigpen, in a suit brought to set aside two deeds executed by appellants conveying to appellee Lot 303, Block 12 of Pelham Place No. 1, an addition to the City of Houston, Harris County, Texas, and also to recover title and possession of said lot and revenues derived therefrom in excess of the amounts expended by appellee in connection with the property and the payment of certain indebtedness of appellants.

Appellants in their first Point contend that the deed executed by them on July 8, 1949, is void because intended as a mortgage on their business homestead. Since such deed is not relied upon by appellee and is not material in arriving at a decision of the case, it need not be discussed.

Appellants assert that for several years preceding January 2, 1951, the date of the second deed, they had many business transactions with appellee and as a result thereof a confidential relationship had sprung up between them and appellee, who was a trust officer in the Bank of the Southwest. Appellant Robert C. Locke, who conducted the transactions for himself and his wife, testified that in 1947 appellee assisted appellants in borrowing some money needed in connection with making improvements on the property in question. In 1949 appellee lent appellants $5,000.00 for which a $6,-000.00 note was given, and at such time appellants executed said deed dated July 8, 1949, with the understanding that when the indebtedness was paid appellants would get the property back. Appellants were to pay $75.00 per week on the note. During the same year appellee helped appellants incorporate Locke's Super Market, Inc., a grocery business, which appellants had been operating on the property in question since 1947. Appellee suggested the lawyer to draw up the incorporation papers and signed the same as an incorporator. He advanced $1,000.00 to assist in obtaining the charter for the company, which sum was later returned to him. He was issued two shares of stock in the company, served as one of its directors and had in his possession some of its records, and for awhile did the bookkeeping for the corporation.

Following the incorporation of the company, appellee continued to advance money from time to time to appellants or the corporation, and on one occasion guaranteed a credit account of the corporation up to $1,000.00. By January 2, 1950 appellants were indebted to appellee in the sum of approximately $10,000.00. Appellants operated the grocery store until December, 1950, or January, 1951, and according to appellant Locke they moved away from the property in May, 1951. Mr. Locke further testified that in November or December of 1950 he and appellee had an oral agreement relative to paying back to appellee the money which he had gotten from him, as follows:

"The Corporation was going to continue to operate the store; the Corporation was going to give Mr. Thigpen the right to collect the rent off of my property and apply such rent that was collected against the indebtedness I owed him or the Bank of the Southwest, whichever it was, and that is what I thought I was executing when I executed. * * *"

Appellants' counsel interrupted appellant and these questions and answers followed:

"Q Just a minute. Now, that was the agreement, was that the agreement you had with Mr. Thigpen?

"A  Yes, sir.

"Q  That you were going to turn your property over to him?

"A  Yes, sir.

"Q.  That you were going to stay in business on the property?

"A  Yes, sir."

He further testified in effect that the agreement was that appellee would collect the rent from the property, and apply it on appellants' indebtedness; make payments on a loan held by a third party which was secured by the property, pay taxes, insurance, expenses on the property, and that when appellee was paid in full, appellants would get the property back and pay some other indebtedness; and that appellee said it would take between five to six years to get his money back.

The original exhibits introduced in the trial are before us. They include: (1) general warranty deed dated January 2, 1950, signed by appellants and duly acknowledged by them on January 18, 1951 before Helen Johnston, a notary public, filed for record January 24, 1951 and duly recorded in the Deed Records of Harris County, Texas, on February 6, 1951, (2) bill of sale from Locke's Super Market, Inc., Robert C. Locke and Cleo B. Locke, to J. W. Thigpen, dated January 2, 1951, duly acknowledged January 18, 1951 before said Helen Johnston filed January 24, 1951 in the Chattel Mortgage Records of Harris County, selling and transferring to appellee an itemized list of all the equipment and fixtures in the grocery store, and (3) a five year lease between appellee as lessor and appellants as lessees of the premises in question, dated January 2, 1951, including all the fixtures and equipment as set out in said bill of sale.

Said appellant testified that he signed the foregoing instruments at appellee's office January 2, 1951, but never read any of them; that he had not had any trouble and didn't anticipate any; that he had confidence in appellee; that he told appellee he might take bankruptcy, and appellee replied that he would lose all his money if appellant did take bankruptcy; that after he signed the papers he moved to Hempstead and began selling chickens; that in the latter part of 1957, he asked appellee to give him his property back and was told that he had signed the property over to him; that nothing occurred between January 2, 1951 up until the first part of 1955 that would have caused him to suspect he had signed a deed to his property to appellee in January, 1951; and that it was his understanding that he was leasing the property to appellee who was to apply rentals to the indebtednesses.

There is also among the exhibits a bill of sale signed by both appellants, dated June 13, 1951, and duly acknowledged before J. C. Bogard, a notary public in and for Shelby County, Texas, transferring to appellee all merchandise in the grocery store in satisfaction of past due rent on the grocery store from January 29, 1951 to June 11, 1951. Appellant testified that his brother operated the store for him until May or June, 1951. He also testified that he did not recall reading such bill of sale which he and his wife had signed and duly acknowledged, but he did recall appellee explaining that he could sell the goods and apply the proceeds to the debts appellants owed.

Appellee asserts that the only relationship between the parties was that of creditor and debtor; that appellant and not appellee was in a position to take advantage of the other, and that appellant by threats of taking bankruptcy caused appellee to change his position for the worse. Appellee points to the testimony of Mr. Locke to the effect that in December, 1950 he was obligated to pay appellee $75.00 per week on his indebtedness, and the only difference under the new arrangement was that the payments were to be called rent; that appellee would receive no more under the alleged new arrangement than under the old, but he would have to pay under the new arrangement for repairs and upkeep of the property, taxes and insurance, and pay off other creditors of appellants. When appel-

lant was asked why appellee would enter into such an agreement, he stated, "He was trying to collect his money." Appellant was asked, "What was Mr. Thigpen to get on this new arrangement that he didn't already have?" Appellant answered, "I can answer that by saying that I could have taken bankruptcy and cut him off from getting anything like all the rest of the creditors and he would have gotten about 5 cents on the dollar if I had taken bankruptcy."

At another point Locke testified, "I didn't have anything to give him but my homestead and I wasn't going to give him that."

▮▮▮ In determining whether there was a confidential relationship between the parties which might give rise to a constructive trust, and also in deciding whether any fact issues were raised in connection with appellants' other Points, we must view the evidence in the light most favorable to appellants against whom the verdict was instructed. White v. White, 1943, 141 Tex. 328, 172 S.W.2d 295; Thomas v. Postal Telegraph-Cable Co., Tex.Com.App.1933, 65 S.W.2d 282. If there is any evidence of probative force in favor of the losing party, we must hold the instruction improper. A peremptory instruction is warranted only when the evidence is such that no other verdict can be rendered. Stevens v. Karr, Tex.Sup.1930, 119 Tex. 479, 33 S.W.2d 725.

▮▮▮ In applying these rules of law, we are compelled to hold that the testimony of appellant Locke raises a fact issue as to a confidential relationship between the parties. Locke's testimony shows that ·a friendship had sprung up between appellee and appellants; that appellee had not only assisted appellants in making a loan in 1947, but had over a period of years lent money to them and the corporation; that appellee had advised appellants in connection with organizing the corporation and was a director and vice president of the company; that he owned two shares of stock in the company and appellants owned 58 shares; that appellant called on appellee several times a month; that appellee guaranteed a credit account of the corporation up to $1,-000.00; that for awhile he kept the corporation books and then later his son kept the books for a time; that he had advanced to or for appellant nearly $10,000.00 without any security therefor other than the deed of July, 1949 which was invalid because intended as a mortgage on appellants' business homestead; that appellee visited the grocery store and had advised appellant in connection with its operation, and on several occasions had gone with appellant to wholesale grocers, and had advised appellant on financial matters.

The tendency of the courts is to construe the term "confidential relationship" liberally in favor of the confider. In Mills v. Gray, 1948, 147 Tex. 33, 210 S.W.2d 985, the court quoted with approval the following language from 54 Amer.Jur. 178, § 233:

" 'A constructive trust arises where a· conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term "confidence" or "confidential relationship" liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof.' "

The court also quoted with approval from Scott on Trusts, Vol. 1, 253, Sec. 44.2, as follows:

"There are numerous cases to the effect that where at the time of the

transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise."

See also Omohundro v. Matthews, Tex. 1960, 341 S.W.2d 401; Johnson v. Peckham, 1938, 132 Tex. 148, 120 S.W.2d 786, 120 A.L.R. 720. See also Cartwright v. Minton, Tex.Civ.App., 318 S.W.2d 449, error ref., n. r. e. 1958, in which the court, in discussing the term "fiduciary", stated:

"Generally speaking it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation as the basis of the transaction. The term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations."

The alleged oral agreement between appellants and appellee to the effect that appellee would lease the property, collect the rents and apply them to the indebtedness and other expenses and upkeep of the property, and then after payment of the indebtedness return the property to appellants, though in the nature of an express oral agreement, may give rise to a constructive trust and as such be enforceable since if a confidential relationship exists the agreement would not be affected by the Texas Trust Act or the Statute of Frauds. Mills v. Gray supra.

We think a fact issue has been raised as to whether there was any such agreement made between the appellee and appellants. Appellee contends, however, that appellant knew or in the exercise of reasonable diligence would have discovered that appellee was claiming the property as and for his own, and that appellants' cause of action, if ever they had one was barred by the statute of limitations. Appellant testified that when the alleged oral agreement was entered into appellee told him that it would take five or six years for appellee to get his money back, and that there was nothing to indicate to appellant that appellee was claiming the property. Appellant also explained that in the letter addressed to appellee June 1, 1951 in which he referred to the property as "your property," he merely meant that appellee had the property under lease and it was his to use. Under this testimony we think a fact issue was raised as to whether or not appellants knew or would have known in the exercise of reasonable diligence that appellee was claiming to own the property.

Appellants also contend that the transfer of the property to appellee was fraudulent because appellee testified that at the time Mr. and Mrs. Locke signed the deed conveying the property to him, he did not intend ever to return the property to appellants. If the agreement was as testified to by appellant, that appellee was to turn the property back to appellants after the indebtedness was paid, and if at the time appellee made such promise he intended not to return the property, a fact issue would be raised as to whether or not appellee's conduct was fraudulent. In Turner v. Biscoe, 1943, 141 Tex. 197, 171 S.W.2d 118, the court held that when a promise is made by a promisor expressly or by necessary implications stating that he has a present intention to perform and if such intention

does not actually exist at that time a false statement has been made upon which fraud may be predicated. In such case the statute of limitations does not begin to run until the fraud has been discovered or would have been discovered by the exercise of reasonable diligence. In the instant case if the agreement was as stated by appellant, then a fact issue was raised as to whether or not appellant exercised reasonable diligence in waiting five or six years before making inquiry as to when he would get his property, in view of appellee's statement that it would be five or six years before the indebtedness would be paid and he would get the property back.

■ The rule is well established that the statute of limitations does not begin to run until the cause of action has accrued. 28 Tex.Jur., p. 139, Limitation of Actions, § 56. In Warnecke v. Broad, 1942, 138 Tex. 631, 161 S.W.2d 453, the court held that the statute of limitations only begins to run from the time that the right of action accrues. In the instant case under the alleged agreement appellants' cause of action did not accrue until the indebtedness was paid some five or six years after the property was turned over to appellee. See also Williams v. Pure Oil Co., 1935, 124 Tex. 341, 78 S.W.2d 929; Hartman v. Hartman, 1940, 135 Tex. 596, 138 S.W.2d 802. Since a fact issue was raised as to whether or not appellant knew or would have discovered appellee's claim to the land in the exercise of reasonable diligence more than four or five years prior to the filing of suit, we cannot say as a matter of law that appellants' claim was barred by limitation.

■ Appellee urges that the disputed oral agreement with respect to the property took place in November or December, 1950, and later in January, 1951 appellant and his wife went to appellee's office and admittedly signed the group of documents appellee tendered to them; and that no fact issue has been presented as to prior negotiations before the documents were signed, because the evidence does not show that appellants' signatures on the documents were fraudulently obtained. Appellants say that they did not read the deed dated January 2, 1951, the lease and the bill of sale, but they do not say that appellee did anything to conceal the nature of the contents of such instruments or to mislead them. It is elementary that a written contract cannot be varied by parol evidence of prior or contemporaneous agreements or negotiations since they are merged in the written instrument. The cases cited by appellee merely hold that a party to a contract which has been voluntarily signed and executed by him, with full opportunity for information as to its contents, cannot avoid it on the ground of his own negligence or omission to read it, in the absence of fraud or imposition. Indemnity Ins. Co. of North America v. W. L. McAtee & Sons, 129 Tex. 166, 101 S.W.2d 553; Weitzman v. Adams, Tex.Civ.App.1940, 139 S.W.2d 855; Pioneer Bldg. & Loan Association v. Johnston, Tex.Civ.App.1938, 117 S.W.2d 556.

It is our view that the cases relied upon by appellee are inapplicable to the fact situation in this case. In them there was no evidence upon which a confidential relationship could be predicated. Appellants have raised a fact issue as to whether the execution of the instruments was the result of fraud consisting of appellee making a promise which at the time the same was made he did not intend to keep. Also, assuming the agreement to be that testified to by appellant, and that appellants and appellee occupied a confidential relationship toward each other, appellee was then placed under a duty to inform appellants at the time the instruments were presented for signature that they provided for a conveyance of the fee title rather than for a lease for years. The action of appellee in presenting the instruments which varied the terms of the agreement without disclosing the variance, with knowledge that appellants were not aware thereof, would constitute fraud. In such case appellants' fail-

ure to read the instruments would be excused because of the fraud consisting of a violation of the duty to disclose imposed by reason of the confidential relationship for otherwise the duty to disclose would be nullified. We think fact issues were raised concerning such matters.

Appellant Locke testified that he did not read the instruments because he relied upon appellee, and had confidence in him. Appellant did admit that he looked at the line appearing at the end of the lease where the word "Lessor" appeared and that he signed on the line as Lessor. Actually the lease was from Thigpen as Lessor to appellants as Lessees for a period of five years, as clearly shown on the first page of the instrument. Appellant also admitted that he and his wife not only signed the bill of sale but also initialed the list of equipment attached thereto, and yet he testified that he did not know what the instrument was. Appellant's testimony may give rise to serious doubts as to his veracity, but since the case is before us as an appeal from an instructed verdict, we cannot pass upon the credibility of appellants, nor the weight of the testimony, nor may we determine whether a judgment favorable to appellants would or would not be against the overwhelming weight and preponderance of the evidence. As a reviewing court we must accept appellant's testimony as constituting some evidence more than a scintilla raising fact issues, and hence hold that the Trial Court erred in instructing the verdict.

Reversed and remanded.

On Motion for Rehearing

Appellee in his motion for rehearing asserts that the question of whether a confidential relationship existed between appellants and appellee is one of law and not of fact. On viewing the evidence in the light most favorable to appellant, we concluded that a fact issue was raised as to the existence vel non of a confidential relationship between the parties, and that there were also other fact issues raised by the evidence necessitating the reversal and remand of the case.

A confidential relation may exist as a matter of law in certain recognized fiduciary relations, such as that of trustee and cestui que trust, attorney and client, guardian and ward, principal and agent or surety, and husband and wife. It may also exist as a matter of fact wherever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on the one side, or weakness, dependence or justifiable trust, on the other. Ringer v. Finfrock, 1941, 340 Pa. 458, 17 A.2d 348. It is our view that in the instant case the question of whether a confidential relationship existed is one of ultimate fact to be determined by the jury under proper instructions as to what would constitute a confidential relationship.

We do not mean to say that the court may not find as a matter of law whether there is a confidential relation existing in certain cases not falling within those hereinabove mentioned. In MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334, our Supreme Court, speaking through Hickman, Commissioner, stated that the Court would experience no difficulty in concluding that the facts related by Follett, if found to be true, establish a relation of trust and confidence between him and MacDonald. In that case, however, the court also significantly stated: "Our question then is whether the facts above recited, viewed in the light most favorable to Follett's contention, raised an issue for the jury on the question of the existence of a relation of trust and confidence."

In Schiller v. Elick, 1951, 150 Tex. 363, 240 S.W.2d 997, the court clearly stated that whether or not a fiduciary relationship exists is a question of fact. The court also said:

"Once the trial court finds as a fact the confidential relationship continuing through to the sale, Elick's breach of duty becomes clear. \* \* \* We are required to presume in support of the trial court's judgment that this issue of fact—the existence of a fiduciary relationship giving rise to the duty to disclose—was found by the trial court against defendant Elick. The evidence in this record will support a finding either way."

Courts in other jurisdictions have held that in some cases the existence of a confidential relation is a conclusion of law, in others it is a question of fact to be established by the evidence. In re: Thompson's Estate, 387 Pa. 82, 126 A.2d 740, and cases cited. In Taylor v. Shields, Ohio App. 1951, 111 N.E.2d 595, the court stated: "What constitutes a confidential relationship between parties is a question of fact dependent upon the circumstances of each case."

On this appeal we are not called upon to determine whether a finding by the jury of a confidential relationship would be unsupported by clear and convincing evidence, but merely whether there is some evidence requiring submission of the question. Sanders v. Harder, Tex.Sup.1950, 148 Tex. 593, 227 S.W.2d 206. See McCormick on Evidence, Ch. 36, p. 680, Footnote 10, where it is stated: "The trial judge, moreover, may not direct a verdict if he considers the evidence not 'clear and convincing,' but he may use the test, in appropriate cases, to set aside a verdict." As stated in the Texas Law Review, Note, Vol. 28, p. 988, the reasoning of the decisions in this State may seem anomalous and illogical in requiring the use of the "preponderance" test by the jury when the "clear and convincing" standard is applied by the court upon motion for new trial. It insures, however, trial by jury since a jury verdict may not be set aside more than two times.

The appellee's motion for rehearing is overruled.