**JOHNSON AIRCRAFTS, Inc., v. WILBORN et al.**

No. 14710.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 5, 1945.

Rehearing Denied Nov. 16, 1945.

Mack Taylor, of Fort Worth, for appellant.

Joe F. Orr and Walter B. Scott, both of Fort Worth, for appellees.

SPEER, Justice.

F. E. Wilborn, John C. Sanders, W. O. Wilborn, and W. R. Cox sued Johnson Air-

crafts, Inc., a corporation, for expenses paid for labor growing out of a written contract made between the named corporation and F. E. Wilborn, W. F. Oliver, and John C. Sanders under which contract the corporation employed the last three named parties to build and construct parts of a plane the corporation had designed; allegations are made that those instituting the suit were the owners of the account.

Johnson Aircrafts, Inc., has appealed from an adverse judgment entered on a jury verdict rendered on three special issues submitted. The corporation will be referred to as appellant and plaintiffs who instituted the suit will be called appellees.

The written contract out of which this controversy arose is rather lengthy and bore date of March 18, 1943. Obviously it was designed to cover many contingencies. We shall refer to pertinent parts of it without setting it out in full. Among other things it provided for the manufacture by appellees of certain parts of the "control surface" of an aeroplane appellant had designed; appellant agreed to furnish space in its plant for appellees to perform the contract; appellees agreed to furnish all "equipment," "jigs," and "fixtures" necessary to manufacture the parts contemplated; appellees were to be compensated for the manufacture of said parts either (1) at a cost plus plan, (2) upon a fixed price per unit, or (3) per ship, as may be determined by the mutual consent of both parties (appellant and appellees), *after appellees shall have manufactured for appellant and it had received ten ships; settlement for work and said manufacturing to be made according to schedule of Government contracts.* [Emphasis ours.) Appellees were to furnish all payroll money used by them prior to the time actual production shall have begun on said ships; but that when production had begun, appellant would furnish funds for payrolls. There is a condition in the contract that appellees will "pay" (loan) to appellant $5000 to be repaid by appellant on or before six months with interest at six per cent per annum. The contract was to last for the duration of the present war, and if appellant began a program of building commercial planes, the parties would negotiate with each other for a continuation of the contract. That the "jigs" and "machines" (made by appellees) shall be the property of appellant and appellees may not remove them from appellant's plant, and further: "However, the party of the second part

(appellees) shall have the right of reimbursement for any amount of money expended by him (them) in labor in building, erecting and manufacturing said jigs and machines." There is a further provision in the contract to the effect that such work, manufacture and production of parts by appellees, should be under the supervision of appellant and in harmony with its engineering standards.

The record discloses that appellees did loan appellant the $5000 provided for in the contract, and perhaps as much as $8000 more subsequent to the execution of the contract. On August 28, 1944, appellees sued appellant for amounts alleged to be owing for borrowed money and for $4187.52 for labor expended in the manufacture of certain jigs, machines and fixtures which they asserted they had obligated themselves to make and manufacture, under the contract; they attempted to show the necessity for and asked that a receiver be appointed to wind up appellant's business. Apparently appellant paid to appellees the borrowed money with interest after suit was filed, and on September 8, 1944, appellees filed their first amended petition omitting the borrowed money items and prayer for receivership, and sought only a recovery of the $4187.52 item for labor in the manufacture of the parts.

Appellant, as defendant below, answered with general denial, special pleas in defense and a cross action for damages for alleged libelous statements made by appellees claimed to be injurious to appellant's good name and credit. For lack of evidence the court found against appellant on its cross action and no complaint is made thereof on this appeal, and we need not give it further attention. We have mentioned this phase of the case only because of a paragraph in appellant's answer, to which we shall later refer.

Appellant answered by admitting the execution of the contract of March 18, 1943; that there was a controversy between it and appellees on and prior to August 28, 1942 (obviously an erroneous date); that appellant claimed it did not owe appellees any sum whatever and that appellees claimed it owed $4187.52. We think it necessary to copy paragraph 6 of the answer because of contentions raised on appeal. That paragraph reads:

"Defendant denies each and every allegation in said petition contained, and here now alleges that the work alleged to have been performed, and service alleged to have been rendered by the plaintiffs herein under the terms of said contract and agreement were not according to specifications which had been theretofore laid down by the defendant in accordance with said contract, and that the completed product and services rendered was of no value to the defendant herein; that under the terms of said contract the plaintiffs herein were to furnish all labor, material and equipment for the erection of certain jigs and forms, which said jigs and forms were to be delivered to the defendant herein and all costs for the preparation thereof were to be paid for by the plaintiffs, and when said jigs and other equipment and fixtures and manufactured products were accepted by the defendant then the defendant was to pay for the same, and the defendant alleges that such manufactured products, jigs and fixtures, when so delivered if the same were delivered, were not according to the specifications and plans outlined by the defendant to the plaintiffs and were by the defendant rejected, and therefore the defendant alleges that it is not indebted to the plaintiffs in any sum of money whatsoever."

Points one and two relied upon by appellant for reversal are said by it to be "under assignment of error No. one." That assignment asserted error of the trial court in overruling its motion for an instructed verdict because "under the terms of the contract between the parties no amount of money ever became due." The reconstructed assignment of error was taken from the first paragraph of appellant's amended motion for new trial. The motion for new trial constitutes the assignments of error to be reviewed by the appellate court. Rule 374, Texas Rules Civil Procedure. A "point" relied upon must be germane to one or more assignments of error. Rule 418, T.R.C.P. It must follow that to entitle a point to consideration there must be an assignment of error. We then look to the alleged assignment of error to ascertain if the court erred in the matters complained of in the assignment. Did the court err in overruling appellant's motion for an instructed verdict? At the close of appellees' testimony and also at the close of all evidence, appellant filed a motion requesting the court to instruct a verdict in its favor. No grounds for the request were included in the motions. The court entered no order thereon but marked them "Refused" dating and signing same. Rule 268, T.R.C.P. pro-

vides: "A motion for directed verdict shall state the specific grounds therefor." The purported motion for an instructed verdict containing no grounds therefor, specific or otherwise, cannot be considered as such a motion, under the rule cited. Certainly under the cited rule the court did not err in "refusing" to sustain such a motion for a directed verdict, hence the assignment of error that the court erred in overruling the motion is not well taken. If the assignment of error must fall for the reasons stated, "points" under it must likewise fail.

Practically half of appellant's printed brief is devoted to points one and two, one phase of which we have above noticed. These points may further be discussed in connection with points 8 and 9. The substance of these four points is: (1) The legal effect of the contract between the parties was that the labor performed by appellees, even though if accepted by appellant, was to be at their own expense until actual production of the aeroplanes began, hence nothing was due them; (2) because appellees obligated themselves to erect parts (of the aeroplane) in harmony with the engineering standards of appellant, and nothing was due them until the requirements were met; (8) before appellees could recover in this case, it was necessary for them to show performance of the contract according to its terms; and (9) the words "labor expended" as used in the contract involved, means money paid out to those hired to do the labor and not salaries charged by the contracting parties (appellees here) who themselves were to make a profit on the labor expended. Appellant follows the last "point" with this parenthetical statement: "By motion for instructed verdict the appellant challenged the sufficiency of the evidence." Counsel fills his brief with statements of the law, quotations from opinions and citation of authorities to the effect that before one suing on a contract can recover, he must establish by a preponderance of the evidence that he has fully performed his contract or that he was prevented from doing so by the opposite party; the soundness of the principles asserted cannot be questioned. Much of the discussion is devoted to the contention that because of the wording of the contract, appellees were not to receive anything from appellant until production started on the aeroplanes and not before ten planes were built; it was shown that appellant had not begun pro-

duction (at least in commercial quantities). It is undisputed that one plane had been built and had been flown for testing. There is a degree of ambiguity in the contract as to whether "production" meant the production of the parts appellees were to make or production of the planes as a whole by appellant. Also if ten planes were to be built by appellees or if to be built by appellant. Just here, we would do well to revert to the pleadings in the case and the theory upon which the case was tried. We have above briefly referred to the pleadings of all parties. Apparently, under the pleadings and the testimony adduced, the theory of appellant was that appellees were not entitled to recover for the reason appellees had contracted to build and construct said jigs, moulds, fixtures and parts according to specifications furnished by appellant; that appellees had failed in these respects and such as appellees did build were worthless to appellant. The issue thus made was submitted to the jury by third special issue in this language: "Do you find from a preponderance of the evidence that the manufacture and production of the jigs was in harmony with engineering standards of Johnson Aircrafts, Inc.?" It was answered, "Yes." While the testimony was conflicting, there was ample testimony to support the answer.

■ The effect of appellant's contentions here is that under the terms of the contract it would not be due to pay appellees anything for making jigs, moulds, or other manufactured parts by them until appellant began production of planes and then not until ten planes had been manufactured by it. There is nothing in appellant's pleadings upon which such contention can be based. The pleadings indicate that each party placed his own construction upon the terms of the contract; the appellees contending that they had built and constructed the parts which they contracted to build and that they were entitled to be reimbursed by appellant for the payrolls expended by them. In denying that it was due appellees anything, appellant gave its version of that part of the contract, in this language: "When said jigs and other equipment and fixtures and manufactured products were accepted by defendant (appellant) then the defendant (appellant) was to pay for same." Construction given by the parties to a contract may be looked to in many instances

in arriving at what they each understood by its terms. 10 Tex.Jur. 298, Sec. 171.

The case was tried upon the theory and issues thus made by the pleadings; appellees contending they had complied with the contract, and the money was due; appellant contending that the parts were not in compliance with its engineering standards and were not accepted by it; but that the parts were worthless to it and for these reasons it owed appellees nothing. Testimony was offered by both parties in support of their respective theories. No contention is made here that the court required the jury to construe the contract. Upon the issues made by the pleading and the conflicting evidence the court submitted three special issues to the jury. In response to Nos. 1 and 2 the jury found: (1) Appellant is indebted to appellees under the contract between the parties, and (2) the amount of said indebtedness is $4187.52. We have quoted the third special issue and its answer, above. Under appellant's special defenses, it alleged in effect that it only owed for the manufactured parts when it accepted them. The court did not submit an issue on whether or not appellant had accepted the parts. Appellant did not request the submission of whether or not it had accepted them. The failure to request such an issue will be deemed a waiver of that issue by appellant. Rule 279, T.R.C.P.

The judgment must conform to the pleadings and verdict when a jury is had. Rule 301, T.R.C.P. The language found in the cited rule requires that the judgment shall conform to both, the pleadings and the verdict; neither is made more important than the other. It appears to be as important that the judgment conform to the pleadings as it is that it conform to the verdict. Rudolph v. Smith, Tex.Civ.App., 148 S.W.2d 225; Southern Underwriters v. Blair, Tex.Civ.App., 144 S.W.2d 641; Day v. Grayson County State Bank, Tex.Civ.App., 153 S.W.2d 599. Evidence on any issue not made by the pleadings in such cases as this is not competent, because immaterial and will not support a judgment whether objected to when offered or not; and certainly would not require an instructed verdict at the hands of a jury, even if a proper motion therefor had been timely made. Rule 301, supra, is the same as was Article 2211, Vernon's Texas Civil Statutes, which was repealed by the passage of the Rule. The same construction will be given the rule as was given by the courts to the cited article of the statute. That incompetent testimony will not support a judgment, see: W. L. Moody & Co. v. Rowland, 100 Tex. 363, 99 S.W. 1112; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 538; City Nat. Bank of El Paso v. El Paso & N. E. Ry. Co., Tex.Civ.App., 225 S.W. 391, writ refused; Southern Surety Co. v. Nalle & Co., Tex. Com.App., 242 S.W. 197, 201 by Com.App., adopted by Supreme Court; Bell v. Rudd, Tex.Civ.App., 189 S.W.2d 22. The general rule announced by us finds support in the text of 25 Tex.Jur. 481, Sec. 102, where among other things it is said: " * * * and a judgment which would be in conformity with pleadings had recovery been sought on one theory will not stand where relief was sought on another theory." Under the pleadings and evidence offered by appellant, it defended against appellees' case upon a different theory from the issues involved and presented for reversal by virtue of the points raised. Hence they present no error and must be overruled.

By point three complaint is made asserting error in this language: "The copies of records self-serving in nature made by plaintiff were not admissible in favor of the person making the copies." This point is based on the testimony of F. E. Wilborn, one of the plaintiffs below, when he offered to testify concerning the items of labor expended in the account sued on. He was asked the amount he had so expended, and he said it was $4187.52, and being called upon to break down the aggregate amount into various items he was unable to remember the entries on the books and said that he, his wife, and another one of the partners had made the entries. That he had previously asked Mr. Johnson, the president of appellant corporation, for payment and Johnson had asked him for a statement of the account; that he had prepared one and delivered it to Johnson which was an exact copy of his book entries. That he also had a copy of the book entries, it being the same as the account presented to Johnson, and was asked to refresh his memory from the copied account and give the various items. Objection was made upon the ground that the books were the best evidence. The court first sustained the objection and upon explanation by counsel

that he only sought to have the witness refresh his memory from the memoranda which was a copy of the account rendered to Johnson, the court overruled the objection and permitted the witness to testify. The witness said he would produce the books at the court house the next day if it was desired. He did produce the books next day and offered them in evidence and was questioned about the entries which had been copied on to the memoranda from which he testified, and point four urged by appellant, complains of the introduction in evidence of the books and Wilborn's testimony concerning them. The witness said the memoranda slips from which he had testified and the copy thereof furnished to Johnson were correct and were exact copies of his books. Hs also testified that the book entries were made under his supervision. The aggregate amount of the entries, both on the memoranda sheet, and on the copy furnished to Johnson, as well also on the books, totaled $4187.52. Because of the numerous items it is evident that Wilborn could not from memory give in detail all of the entries nor could he do so from memory afted consulting the memoranda or even the books themselves. But he did say that all were alike and showed the amounts of monies expended for labor in performing the contract. We do not think that reversible error is presented by either of these points. If it could be said that it was improper to permit the witness to testify from the memoranda taken from the books, certainly that error was cured when the books were presented and offered in evidence the next day. Nor do we think there was error as presented by the fourth point in the introduction of the book entries which were shown to be identical with the memoranda from which the witness had testified as well also the copy of the account furnished to appellant. Moreover, all of the persons to whom payments had been made, as disclosed by the books, testified in the case, except three individuals representing less than $200 of the whole amount paid, and each of them testified as to his labor and the amount paid, and the respective amounts which each said he or she earned and was paid corresponded with the book entries. Hence, we see no reason to reverse this judgment upon the two points mentioned.

■ Fifth point asserts: "It is reversible error to admit over the objection of the complaining party an unsworn communication between plaintiffs and one of their partners." This asserted error grows out of the admission in evidence of a letter from W. F. Oliver to the appellees in their trade name of "Texas Aero Products Co." in which letter Oliver acknowledged payment for all of his interest in the claim sued on. It will be observed from the early part of this opinion that W. F. Oliver was one of the original contracting parties and was a plaintiff when the suit was first instituted. It appears that after the institution of the suit and prior to the first amended petition, Oliver sold his interest in the claim to the remaining partners who became the plaintiffs in the amended petition under which the suit was tried. The new plaintiffs under the amended pleadings alleged that they were the owners of the debt sued on, and in an effort to prove ownership, receipt of payment by Oliver for his interest in form of a letter was admitted in evidence. Upon the trial of the case Oliver testified at the instance of appellees and reiterated, without objection, substantially all that was disclosed in the offending letter or receipt. We perceive of no prejudicial effect this letter could have had upon the rights of appellant.

■ Sixth point reads: "The proof of matters not supported by the pleadings and having no bearing on the matter at hand is reversible error." This very general abstract proposition seems to be based upon a bit of testimony given by one of the appellees, Mr. Sanders, while being questioned concerning the expenses paid out for manufacturing the articles they had contracted to make. After having testified that appellees had paid out in wages and labor the amount sued for he was asked if they had been out any other sums of money, and he said that they had given or paid one of the employees, a Mr. Leslie, $100 more than they owed him at a time when he (Leslie) was leaving to join the Navy, but the witness added that the $100 was no part of the amount sued for, and that they were not asking appellant to repay it. Certainly, the $100 item had no part in this law suit, and did not relate in any degree to the liability of appellant. When appellant objected to Sanders' testimony concerning the $100, the court remarked that plaintiffs could not recover that money and that the item was mentioned once before by another witness (Mr. Wilborn) and that counsel for appellant objected to it first and then waived objec-

tion, and the court added on that account "I will let it in again—it won't hurt." It is clear to us that no effort was made to recover the $100 item in the suit, and that all of it was a pure gratuity, but since it had been testified to by Wilborn, without objection, as indicated by the court, appellant will not be permitted to base a complaint thereon when offered a second time.

■■■ Seventh point complains because the court permitted a non-expert witness "to testify as to whose fault it was that certain work had to be done over again," because it is contended that such evidence violates the hearsay evidence rule and permits a witness to express an opinion and not testify as to a fact. The point of error is based upon parts of the testimony of a Mr. Eichholtz. The witness said in substance that he worked for appellant while the appellees were engaged in making the jigs, moulds, and parts under their contract. That he worked in appellant's engineering department and was classified as an engineer, especially in drafting and drawing plans from which blue-prints were made. That he made all of the original drawings from which the blue-prints were made and furnished to appellees for making the parts involved in this suit. That the blue-prints from the engineering department were furnished to appellees and from these blue-prints they made the jigs. And that is what they were supposed to do. The witness said he had occasion to observe the work of appellees from time to time and that on one occasion he recalled there was some controversy about a part made from the blue-prints as to whether it was according to specifications, and that he went to appellees' department to check with them as to whether they were following the blue-prints—that is, as to the interpretation of his drawings. He said that on investigation he found that appellees were following the blue-prints as they were, and after a considerable colloquy as to its ad-

missibility, he said that it was his fault that the parts were not correct. This last conclusion expressed by the witness is the one complained of in the point of error. The contract provides in substance that the parts to be made by appellees "shall be under the supervision of the party of the first part and in harmony with engineering standards of the said party of the first part" (meaning appellants). The whole record reflects that appellant had designed a plane and was having Eichholtz to make drawings of the parts to be manufactured by appellees and that these drawings were converted into blue-prints and furnished by appellant to appellees to guide them in their work. When it was discovered that the part did not fit, and Eichholtz said he checked the work with the blue-prints and found they were made according to the blue-prints, we see no error in the court's permitting Eichholtz to testify that the fault was all his own.

■■■ We have carefully studied the statement of facts bearing upon the matters raised in points three to seven, both inclusive, and in the light of the record we have definitely concluded that the things complained of were not such as to result in a denial of the rights of appellant in this case, nor were any of the matters complained of reasonably calculated to cause an improper verdict by the jury nor the rendition of an improper judgment by the court in the case. Thus believing, we overrule points three to seven under authority of rules 434 and 503, T.R.C.P. The cited rules are based upon statutory provisions which were repealed with the passage of the rules and also embrace the principal feature in former rule 62a for Courts of Civil Appeals.

For the reasons stated, all points of error presented by appellant are overruled, and the judgment of the trial court is affirmed.