**GOLDMAN et al. v. CAMPBELL et al.**

No. 15349.

Court of Civil Appeals of Texas.
Fort Worth.
May 9, 1952.

Rehearing Denied June 6, 1952.

Chester B. Collins and Joe F. Orr, both of Fort Worth, for appellants.

Thompson, Walker, Smith & Shannon, and Paul C. Cook, both of Fort Worth, for appellees.

634

RENFRO, Justice.

Ed G. Max, acting temporary administrator of the estate of Mary M. Bowman, deceased, petitioned the probate court of Tarrant County to determine whether a written instrument signed by Mary M. Bowman should be admitted to probate as a will.

Charlotte Goldman and husband and Harry Loyd Max filed their opposition to the admission to probate of said instrument, and alleged that they, with Ed G. Max, their brother, were nephews and niece of Mary M. Bowman and were all and the only heirs to her estate.

An intervention was filed by Forrest Campbell and twenty-one others, asserting they were (a) cousins of Mary M. Bowman, and (b) children of deceased cousins of Mary M. Bowman, and were the only heirs of deceased Mary M. Bowman.

The probate court refused to probate the will. The final order declared contestants to be nephews and niece of Mary M. Bowman, entitled to contest the purported will, found contestants and Ed G. Max to be the only heirs of Mary M. Bowman, and that none of intervenors were heirs of Mary M. Bowman entitled to contest or oppose the will.

Intervenors appealed to the district court of Tarrant County. In the district court all parties stipulated • that the purported will was void for uncertainty and because of its being impossible to enforce and carry out. The relationship of intervenors to Mary Bowman was not in dispute. The only contested question before the district court was the relationship between contestants and Mary Bowman.

The jury found that contestants were not nephews and niece of Mary M. Bowman, whereupon the court entered judgment decreeing intervenors to be the sole and only heirs of Mary M. Bowman and entitled to all of said estate, subject only to due and proper administration thereof.

■ Appellants, contestants below, allege the verdict is so contrary to the overwhelming weight of the evidence that same should be set aside and a new trial ordered.

Mary M. Bowman was the daughter of George and Olivia Bowman. Appellants were the children of Harry George Max. They alleged and attempted to prove that Harry George Max was in reality the son of George and Olivia Bowman, and thus the brother of Mary M. Bowman.

Appellants were unable to produce a birth certificate of Harry George Max. They did produce several witnesses who testified they had heard members of the Bowman and Max families say that Harry George was a son of George and Olivia Bowman, and that he had been allowed to live with the Max family from early childhood because of the poverty of the Bowmans, and that he took the name Max. On the other hand, appellees introduced testimony from witnesses who denied that Harry George was a son of the Bowmans; that the only Bowman children who lived beyond infancy were Mary, Junius and Euday; that the Bowmans were in good financial circumstances and had no reason to place a child with some one else to rear. The testimony above set out, as well as other evidence contained in an unusually long statement of facts, supports the jury's finding that Harry George was not the son of George and Olivia Bowman.

The point of error is overruled.

Appellants contend the court erred in allowing in evidence a written statement by Andrew Bowman, brother of George Bowman, concerning the children of George and Olivia Bowman. The paper referred to was prepared by Andrew Bowman more that forty-five years before this controversy arose. He died many years ago. The paper was prepared for the Daughters of the American Revolution.

■■ The law is well settled that declarations or statements concerning pedigree constitute an exception to the hearsay rule. Such evidence is competent when based upon a statement made by a blood relative having knowledge of the fact, but who is dead or otherwise unobtainable. We overrule the point of error. Burrell v. Westbrook, 163 S.W.2d 695, writ refused, w. m.; Fowler v. Simpson, 79 Tex. 611, 15

635

S.W. 682; Smith v. Lynn, Tex.Civ.App., 152 S.W.2d 838.

Appellants assert that the court improperly placed the burden of proof upon them in the issue submitted to the jury.

We overrule the point. The relationship of appellees to Mary Bowman was not in dispute. Appellants, on the other hand, pleaded and assumed the burden of proving that they were nephews and niece of Mary Bowman. In fact the disputed relationship of appellants of Mary Bowman was the controlling issue to be determined in the district court. The issue was correctly submitted.

Appellants complain of the refusal of the trial court to submit certain requested issues, and contend further that the trial court, under the evidence, erred in entering judgment finding appellees to be the only heirs of Mary Bowman.

Appellants went to trial on a petition claiming they were nephews and niece of the deceased. Their whole effort was devoted to proving that issue. After the court's charge was prepared, appellants requested the court to submit issues inquiring if Charlotte Max and Olivia Bowman were sisters, and if so to find the relationship between Harry George and Charlotte and Mike Max.

Appellees objected to any evidence or issues concerning any relationship between the parties other than nephews and niece unless appellants amended their petition. The court invited appellants to amend, but they refused.

We overrule appellants' points of error for two reasons. In the first place, there is not sufficient evidence of probative value in the record to sustain a finding that Harry George was Charlotte Max' son. The evidence is undisputed that Harry George was five or six years of age when Charlotte married Mike Max. Charlotte was not married prior to her marriage to Max, and Harry George did not live with her prior to her marriage to Max. While the evidence supports the jury finding that Harry George was not the son of George and Olivia Bowman, a painstaking search

of the voluminous record leaves his actual parentage buried in obscurity.

In the second place, we think the court did not err in refusing to submit the requested issues because there were no pleadings to sustain said issues.

Rule 277, T.R.C.P., provides for submission of special issues raised by the *written* pleadings and the evidence in the case, and Rule 279, T.R.C.P., provides that when the court submits a case upon special issues, he shall submit the controlling issues made by the *written* pleadings and the evidence, except in certain cases not here involved. Rule 67, T.R.C.P., provides that when issues not raised by the pleadings are tried by express or implied consent, they shall be treated as if they had been raised by the pleadings. As heretofore noted, appellants objected both to testimony and issues on matters not pleaded, and therefore did not give their express or implied consent to the requested issues.

This court in Johnson Aircrafts v. Wilborn, 190 S.W.2d 426, writ refused, w. m., held that the language of Rule 301, T.R. C.P., requiring a judgment to conform to the pleadings and verdict, requires that the judgment conform to both, that it appears to be as important that the judgment conform to the pleadings as it is that it conform to the verdict. See also Carter v. Old Faithful County Mutual Fire Ins. Co., Tex.Civ.App., 243 S.W.2d 215; 8 Tex.Jur., Ten Year Supp., p. 88, § 45. The trial court did not err in refusing to submit the requested issues and in entering judgment for appellees.

Motion for new trial, based on newly discovered evidence, was overruled by the court, and this action is assigned as error.

Appellants, during the trial, introduced a family group photograph which they attempted to identify as portraying George and Olivia Bowman and their five children. Evidence produced by appellants and appellees was in sharp contradiction, appellees' witnesses denying that the photograph represented the George Bowman family. Appellants introduced a disinterment permit showing that Oscar Bowman was buried on February 11, 1886. They

also introduced a photograph of a mausoleum in which Euday and Mary were buried. This showed the birth date of Euday Bowman as being November 9, 1886. The jury, during their deliberations, noted that if Oscar died before Euday was born, the persons in the disputed photograph could not be the George Bowman family. Affidavits of several jurors were attached to appellants' motion for new trial, in which affiants stated they were influenced in answering the issue submitted adversely to appellants because of the discrepancy in dates. Appellants offered the testimony of Frank Isham on hearing for new trial in which he stated that he had been in the Bowman home between April 8 and May 6, 1886, and Oscar was alive at that time. He also testified he saw Euday and a boy called Harry George at that time.

Appellants contend they were entitled to a new trial in order to present Isham's testimony. It is undisputed that Isham first made known his information to appellants after the case had gone to the jury.

In order to justify the trial court's granting a new trial on the ground of newly discovered evidence, the appellant must show that such evidence was discovered too late to present at the trial; that it was not due to lack of diligence on appellant's part; that the testimony was material and not merely cumulative; that the evidence was so material it would probably, if believed, bring about a different verdict on another trial. 31 Tex.Jur., p. 91. The appellants met the first requirement, but in our opinion failed to meet the other three requirements.

Appellants admitted on the hearing of motion for new trial they had access to other evidence showing when Euday was born. Isham's testimony that Oscar and Euday were living at the same time is merely cumulative of other testimony introduced, and had no direct bearing on the ancestry of Harry George. His testimony that Oscar was alive in April or May, 1886, is contradictory, not to any evidence appellees introduced, but to evidence appellants themselves introduced. Incidentally the date of the death of Oscar was given by Mary Bowman prior to her

death, and she, as oldest child of George and Olivia, was in the best position to know the family history.

Actually appellants are in the position of requesting a new trial because the jury believed some of appellants' evidence while disbelieving contradicting evidence thereto, also introduced by appellants. We think the losing party should not be granted a new trial merely for the purpose of allowing him to rectify errors or explain contradictions he may have made in the original trial. Furthermore, we are unable to say that in our opinion the testimony offered on the hearing on motion for new trial would probably result in a different verdict on another trial.

 The granting of a new trial on the ground of newly discovered evidence is largely in the discretion of the trial court, and unless such discretion has been abused, the ruling will not be disturbed on appeal. Mitchell v. Bass, 26 Tex. 372; Williams v. Southern Life & Health Ins. Co., Tex. Civ.App., 208 S.W.2d 574.

A careful study of the record leads us to the conclusion the trial court did not abuse his discretion in overruling the motion for new trial.

Finding no reversible error, the judgment of the trial court is affirmed.