**TEXAS BANK & TRUST COMPANY OF DALLAS, Appellant,**

v.

**CUSTOM LEASING, INC., Appellee.**

No. 563.

Court of Civil Appeals of Texas, Tyler.

July 26, 1973.

Rehearing Denied Aug. 30, 1973.

John F. Maxfield, Stigall, Maxfield & Collier, Dallas, for appellant.

Donald M. Hunt, Key, Carr, Evans & Fouts, Lubbock, for appellee.

DUNAGAN, Chief Justice.

This suit was brought by Custom Leasing, Inc., against Texas Bank & Trust Company of Dallas for recovery of monies alleged to have been paid by reason of either mutual mistake or through false representation for release of a chattel mortgage. On a jury verdict judgment was entered by the trial court in favor of plaintiff. Defendant Texas Bank appealed the case to this court, and on that appeal the cause was reversed and rendered in favor of the defendant-appellant. Tex.Civ.App., 470 S. W.2d 123. The appellee sought writ of error in the Supreme Court of the State of Texas, and after granting the writ, that court reversed the decision of this court and remanded the case for further consideration. Tex., 491 S.W.2d 869.

Sometime prior to April 3, 1963, James E. Lyles of Midland, Texas, appeared at the Texas Bank & Trust Company of Dallas requesting a loan on behalf of Gentry Construction Company, Inc., in the amount of $20,000.00. He contacted Mr. Warren Sudduth, an officer of the Bank, and represented himself as the vice-president of Gentry Construction Company, Inc. Mr. Sudduth promised to make the loan to Gentry Construction Company, Inc., provided Lyles would obtain a corporate resolution authorizing the loan and providing both Lyles and George W. Gentry, the president of the construction company, would co-sign the note and become personally liable thereon. A note in the amount of $18,900.00 was prepared showing Gentry Construction Company, Inc., as the principal obligor and Lyles and Gentry as co-signers. A chattel mortgage was also prepared showing Gentry Construction Company, Inc., as the mortgagor. The note and chattel mortgage were handed to Mr. Lyles who was to execute the same as vice-president and also obtain the signature of George Gentry as a co-signer thereon. He took the note and chattel mortgage and returned to the Bank within a few days with the corporate resolution of the construction company showing that the corporation had authorized the making of the loan. He also returned the note to Mr. Sudduth showing that the corporation had executed the same through Lyles as its vice-president and the note also contained the signature of Lyles and George W. Gentry personally. Lyles also returned to Sudduth the chattel mortgage which showed to have been executed by the corporation under the corporate seal and which was executed by Lyles as vice-president of Gentry Construction Company, Inc. The loan was completed and the money was advanced to Gentry Construction Company, Inc. When the note became due, the company failed to pay the note and thereupon Mr. Sudduth went to Midland and contacted James E. Lyles. Mr. Lyles asked for more time and during the conversation told Mr. Sudduth that George W. Gentry did not sign the note.

Before the 28th day of April, 1964, while the note was still delinquent, Mr. Sudduth received a call from Mr. Lyles who was in the offices of Custom Leasing in Lubbock. Mr. Lyles told Mr. Sudduth that Custom Leasing was contemplating purchasing the equipment of Gentry Construction Company, Inc., which was secured by the mortgage to the Bank. Upon being told that the Bank had the mortgage and note, Mr. Pogue, a representative of Custom Leasing, took the phone and asked Mr. Sudduth how much it would take to get a release of the chattel mortgage. Mr. Sudduth replied that the Bank would release the chattel mortgage for the sum of $19,089.00. Thereupon Mr. Pogue advised Sudduth to execute the release and then mail the same, with a draft attached, to Custom Leasing's Bank in Lubbock, Texas, and Custom Leasing would pay the same. This was done and the Bank received payment. The conversation appears to have been very brief and related to the release of the Bank's chattel mortgage. Mr. Pogue did not seek to purchase the note nor did he request an assignment thereof. The record shows that the note remained in the hands of Texas Bank & Trust Company of Dallas and that there is presently a balance due and owing on the note in the approximate amount of $2,000.00. There is no evidence in the record showing that at the time of the telephone conversation Mr. Sudduth had any information that James E. Lyles was not the duly authorized vice-president of Gentry Construction Company or that there was any question in regard to his authority to execute the note on behalf of Gentry Construction Company; and, in fact, the jury found that Lyles had apparent authority to act for Gentry Construction Company. The only information that Sudduth had casting any doubt upon the transaction was the statement by James E. Lyles that George W. Gentry did not sign the note. The record shows Sud-

duth had no information which would indicate the note and chattel mortgage were invalid. Mr. Pogue did not ask Mr. Sudduth if he had any information with regard to whether Mr. Lyles had authority to act for Gentry Construction Company or whether he had any opinion as to the validity of the chattel mortgage which the Bank held. At the time of the conversation Mr. Sudduth had no knowledge that George W. Gentry as president of the Gentry Construction Company would deny that Lyles had authority to represent the corporation. Sudduth testified that, although he knew Lyles had said Mr. Gentry did not sign the note, he felt that Gentry for some reason or another was planning to escape personal liability on the note.

After Custom Leasing had received the release of the Bank's chattel mortgage, it proceeded to purchase the equipment of Gentry Construction Company, Inc., by a bill of sale executed by Lyles as vice-president of Gentry Construction Company, Inc. In a simultaneous transaction, Custom Leasing then leased the equipment back to Gentry Construction Company upon a monthly rental. When Gentry Construction Company failed to pay the monthly rental, Custom Leasing commenced an investigation and found that Mr. Gentry, the president of the company, denied that Lyles was a vice-president or had any authority to sign for the company. He also denied that he signed the note at the Texas Bank & Trust Company in Dallas. When it appeared to Custom Leasing that the entire transaction appeared to be fictitious, Custom Leasing filed suit against Gentry Construction Company, Inc., George W. Gentry, and James E. Lyles in the District Court of Midland County. Subsequently Custom Leasing joined Texas Bank & Trust Company as a party to the suit. The Bank's plea of privilege was subsequently sustained and the cause was transferred to the District Court of Dallas County.

The facts of this case are fully discussed in both the opinion of the Supreme Court and in our prior opinion, so we will defer further recitation of facts other than to point out a factual error made in both prior discussions of this case. In referring to the note and chattel mortgage involved in this case it is important to be aware of the precise nature of the signatures on both documents. The chattel mortgage was signed by "Gentry Construction Company, Inc. by James E. Lyles V.P." No other signature appears on that instrument other than that of a notary. The note involved was signed by "Gentry Construction Company, Inc. James E. Lyles Vice Pres.," by George W. Gentry personally and by James E. Lyles personally. There was no signature on the note by George Gentry in any other capacity than as an individual. Indications in both prior opinions to the contrary notwithstanding, there is no signature purporting to be that of Gentry anywhere on the chattel mortgage, nor is there any signature of Gentry on either instrument made in his capacity as an officer of Gentry Construction Company. On both instruments the construction company appears as the primary obligor.

■■ In the first of appellant's points of error not ruled on in the prior opinions in this case, appellant complains of the failure of the trial court to grant its motion for "judgment notwithstanding the verdict," which motion included as partial grounds therefore the allegation that appellant's motion for judgment on the verdict should have been granted. In order to determine whether such an allegation can be entertained, we must first determine the correctness of the trial court's entering judgment for appellee on the basis of the verdict, for the findings of the jury in the verdict will conclusively establish the basis of the judgment unless and until a successful and direct attack is made on such findings based on the insufficiency of the evidence supporting them. Rules 300 and 301, Texas Rules of Civil Procedure; Ardoin v. Walker, 466 S.W.2d 595 (Tex.Civ.App., Houston (14th) 1971, n. w. h.); Fidelity & Casualty Company of New York v. Mary-

land Casualty Company, 151 S.W.2d 230 (Tex.Civ.App., San Antonio, 1941, n. w. h.). Because appellant's points of error all relate to a determination of the correctness of the trial court's action in granting appellee's motion for judgment on the verdict, they will be answered in the discussion of the relationship between the verdict and the judgment rendered in the court below.

Since the judgment rests on the jury's answers to special issues, and the submission and construction of those issues is part of the basis of this appeal, we feel it appropriate to detail the findings of the jury. The Special Issues submitted and answered were:

"SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that when he executed and delivered the Promissory Note and Chattel Mortgage dated April 3, 1963, to Texas Bank & Trust Company, James Lyles did not have authority to act on behalf of Gentry Construction Company?

ANSWER: He did not have authority.

"SPECIAL ISSUE NO. 1–a.

Do you find from a preponderance of the evidence that George Gentry signed the Promissory Note dated April 3, 1963, payable to Texas Bank & Trust Company?

ANSWER: No.

"SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that prior to April 28, 1964, Warren Suddeth (sic) represented to Custom Leasing, Inc. that Gentry Construction Company owed Texas Bank & Trust Company $19,089.00 pursuant to a Promissory Note secured by a Chattel Mortgage?

ANSWER: Yes.

"SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that such representation, if any, was a material fact, as defined herein, in the payment by the Plaintiff of the sum of $19,089.00 to Defendant?

ANSWER: Yes.

"SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that such representation, if any, was false?

ANSWER: It was false Yes. It was not false ——.

"SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that such representation, if any, was willful, as defined herein?

ANSWER: It was willful ——. It was not willful not willful.

"SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that when Texas Bank & Trust Company caused to be delivered to Custom Leasing, Inc. copies of the purported Power of Attorney and Corporate Resolution of Gentry Construction Company it represented that James Lyles had authority to act on behalf of Gentry Construction Company?

ANSWER: No.

"SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that Texas Bank & Trust Company believed that James Lyles had

authority from Gentry Construction Company to cause the Promissory Note to be paid to Texas Bank & Trust Company and the Chattel Mortgage to be released?

ANSWER: Yes.

"SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that Custom Leasing, Inc. believed that James Lyles had authority from Gentry Construction Company to cause the Promissory Note to be paid to Texas Bank & Trust Company and the Chattel Mortgage to be released?

ANSWER: Yes.

"SPECIAL ISSUE NO. 13

Do you find from a preponderance of the evidence that Texas Bank & Trust Company believed that at the time they were contacted by Custom Leasing, Inc. it had a valid Promissory Note from Gentry Construction Company dated April 3, 1963?

ANSWER: No.

"SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that Custom Leasing, Inc., at the time they contacted Texas Bank & Trust Company, believed that Texas Bank & Trust Company had a valid Promissory Note from Gentry Construction Company dated April 3, 1963?

ANSWER: Yes.

"SPECIAL ISSUE NO. 16

Do you find from a preponderance of the evidence that Warren Sudduth at the time he made such representations, if any he made, knew that such representations were false, if they were?

ANSWER: Yes.

"SPECIAL ISSUE NO. 17

Do you find from a preponderance of the evidence that the loss, if any, suffered by plaintiff, Custom Leasing, Inc., was caused in whole or in part by plaintiff's lack of ordinary care in the entire transaction?

ANSWER: Yes.

"SPECIAL ISSUE NO. 18

Do you find from a preponderance of the evidence that James E. Lyles had apparent authority to act for Gentry Construction Company, Inc. at the time of the execution of the Chattel Mortgage on behalf of Gentry Construction Company?

APPARENT AUTHORITY is meant such authority as a reasonable man, in view of the principal's conduct, would naturally and reasonably suppose the agent to possess.

ANSWER: Yes.

"SPECIAL ISSUE NO. 19

What do you find from a preponderance of the evidence, if anything, was the actual loss to the plaintiff resulting directly and proximately from the false misrepresentation, if any, of the defendant?

ANSWER: In dollars, if any, or cents, if any, or none.

ANSWER: $11,000.00 & no cents."

Other issues were either not submitted or they were left unanswered due to the manner in which they were conditioned on responses to answered issues. The Bank made motion for judgment on the verdict, as did Custom Leasing. The court entered judgment for Custom Leasing and the Bank made a motion for judgment notwithstanding the verdict. It was overruled by the court and this appeal resulted. Appellant complains of the court's failure to

submit issues inquiring into the apparent authority of Lyles at the time the lease-back agreement was consummated with Custom Leasing, and asking whether in making that agreement Custom Leasing relied on the "misrepresentations" made by the Bank. Appellant asserts that Special Issues Nos. 2, 4, and 11 should not have been submitted because there was allegedly no evidence to support such a submission. Appellee counters these arguments by asserting that the issues found by the jury will support its recovery on four different theories of law: fraud, money had and received, mutual mistake, and unilateral mistake. Any of these theories, alleges appellee, will support the judgment, though in a cross-point it urges that the jury found an insufficient amount of damages.

■ In order for the trial court to have been correct in granting judgment on the verdict in favor of Custom Leasing, it must appear that one of the four theories on which Custon Leasing sought recovery is supported in the pleadings and by the findings of the jury. Rules 300 and 301, T.R.C.P.; Johnson Aircrafts v. Wilborn, 190 S.W.2d 426 (Tex.Civ.App., Fort Worth, 1945, writ ref'd w. o. m.); Farmer v. Denton, 231 S.W.2d 908 (Tex.Civ.App., Amarillo, 1950, no writ); Carter v. Old Faithful County Mutual Fire Ins. Co., 243 S.W.2d 215 (Tex.Civ.App., Fort Worth, 1951, no writ). The first theory on which Custom Leasing urges the judgment can be sustained is that of fraud. It is alleged that by the findings to Special Issues Nos. 1–4, 13–16, and 19, the jury sustained a recovery on the basis of fraud.

■ The elements of actionable fraud have been several times delineated by our courts, occasionally using varying formulae, and the substantial elements usually required are: (1) a false representation of a material fact made or uttered by the party charged, (2) reliance thereon by the party seeking recovery, (3) scienter or intent on the part of the party charged to induce such reliance, (4) freedom from failure to exercise reasonable care to protect his interests by the complaining party, and (5) damage to the complaining party directly resulting from the misrepresentation. Morgan v. Box, 449 S.W.2d 499 (Tex.Civ. App., Dallas, 1969, n. w. h.); Hazle v. McDonald, 449 S.W.2d 343 (Tex.Civ.App., Dallas, 1969, n. w. h.); Sanders v. Select Insurance Company, 406 S.W.2d 937 (Tex.Civ.App., Dallas, 1966, n. w. h.); Universal Life & Accident Insurance Company v. Burden, 294 S.W.2d 855 (Tex.Civ. App., Fort Worth, 1956, n. w. h.); Stroud v. Pechacek, 120 S.W.2d 626 (Tex.Civ. App., Austin, 1938, n. w. h.); United States Pipe & Foundry Co. v. City of Waco, 100 S.W.2d 1099 (Tex.Civ.App., Waco, 1937, affirmed, 130 Tex. 126, 108 S.W.2d 432); Southwestern Indemnity Company v. Cimarron Insurance Company, 334 S.W.2d 831 (Tex.Civ.App., Waco, 1960, reversed on other grounds, 161 Tex. 516, 344 S.W.2d 442). A typical statement of the law was made in Moore & Moore Drilling Company v. White, 345 S.W.2d 550 (Tex.Civ.App., Dallas, 1961, writ ref'd, n. r. e.) at 555:

"Appellant does not contend that appellee made a misrepresentation to appellant upon which appellant relied to its detriment. Appellant relies entirely on the proposition that appellee withheld facts concerning the corporation's financial condition, and that this withholding of information constituted actionable fraud. With this contention we are unable to agree. Actionable fraud has certain fundamental characteristics: (1) there must be a misrepresentation as to material facts, either positive untrue statements, or concealment or failure to disclose facts within the knowledge of the parties sought to be charged, and as to which the law imposed upon such party a duty to disclose; (2) the complaining party must be shown to have relied upon the alleged misrepresentation to his damages; and (3) the complaining party must, himself, not have failed to exercise reasonable care to protect himself—in

other words, in a 'caveat emptor' situation he must not have shut his eyes and ears to matters equally open and available to him upon reasonable inquiry and investigation. * * *

" * * * The suppression of information could only be fraud where he [the party charged] knows that the other party is ignorant of such facts and that the other party has not equal opportunity of discovering the truth. * * *" (Citing cases.)

■ There was a finding by the jury that a false representation was made by appellant. Though no issue inquiring into the reliance question was submitted, appellee urges that it was found in favor of appellee as a matter of law. Without deciding the merits of this position, we are compelled to give attention to the finding of the jury in response to Special Issue No. 17. In that issue the jury was questioned as to Custom Leasing's exercise of ordinary care in "the entire transaction." The jury found essentially that the loss complained of was caused, at least in part, by Custom Leasing's failure to exercise ordinary care. It cannot be denied that in order to recover on a theory of fraud, the complaining party must show itself to be free from a failure to exercise ordinary care in the circumstances giving rise to the complaint. Locke v. Thigpen, 353 S.W.2d 249 (Tex.Civ.App., Houston, 1961), rev'd on other grounds, 363 S.W.2d 247; City of Houston v. Howe & Wise, 373 S.W.2d 781 (Tex.Civ.App., Houston, 1963, writ ref'd n. r. e.); Moore & Moore Drilling Company v. White, supra. There is some question raised in this appeal as to whether there was sufficient finding of the elements of intent and reliance. Having found that the failure to exercise ordinary care precludes Custom Leasing a recovery on a fraud theory, we feel it unnecessary to discuss these points and they are, therefore, overruled.

■ Since we are compelled to uphold the judgment of the trial court if it can be sustained on any independent and reasonably applicable theory of recovery, we must examine the other theories urged by Custom Leasing as being sustained by the jury's verdict. Yellow Cab Co. v. Pfeffer, 233 S.W.2d 964 (Tex.Civ.App., Austin, 1950, no writ); Reddick v. Longacre, 228 S.W.2d 264 (Tex.Civ.App., Fort Worth, 1950, writ ref'd n. r. e.). The second theory on which appellee urges the judgment of the court can be affirmed is one based on "money had and received" by the bank, a legal action controlled by principles of equity. Aetna Casualty & Surety Co. v. Corpus Christi Nat. Bank, 186 S.W. 2d 840 (Tex.Civ.App., San Antonio, 1944, writ ref'd w. o. m.); and see cases collected in Corrigan v. Heard, 225 S.W.2d 446 (Tex.Civ.App., San Antonio, 1949, writ ref'd n. r. e.). Such an action is maintainable where one person possesses money belonging to another which in good conscience and equity he ought to pay that person. The recovery may not be had where, as here arguably, the defendant received the money under a good faith claim of right (the jury was not asked anything regarding the good faith of the Bank, but they did find that the misrepresentations were not made willfully). Kidder v. Hall, 113 Tex. 49, 251 S.W. 497 (Tex.1923). As a defense to an action for money had and received, defendant may show those facts which may entitle him to retain the money on either equitable or legal grounds. Red Ball Motor Freight, Inc. v. Bailey, 332 S. W.2d 411 (Tex.Civ.App., Amarillo, 1959, writ ref'd n. r. e.); 58 C.J.S. Money Received, § 28. This position was sustained by the Supreme Court in Staats v. Miller, 150 Tex. 581, 243 S.W.2d 686 (Tex.1951).

"The governing principle is this: that where equally innocent persons have dealt with one another under a mistake the burden of loss resulting from the common error ordinarily will be left where the parties themselves have placed it, * * *." Holly v. Missionary Society, 180 U.S. 284, 21 S.Ct. 395, 45 L.Ed. 531 (1901), cited with approval in Aetna

Casualty & Surety Co. v. Corpus Christi Nat. Bank, supra.

The jury having found that Custom Leasing failed to exercise ordinary care "in the entire transaction," we cannot say appellee is, therefore, an innocent party entitled to the extraordinary equitable relief it seeks under a theory of money had and received. Since a recovery for money had and received, though legal in nature, is controlled by equitable principles, and since it is axiomatic that the "clean hands" doctrine functions in equitable actions, the failure of appellee to exercise ordinary care should, independent of any claim of right in appellant, preclude any recovery on an assumpsit theory. See 6 Tex.Jur.2d, Assumpsit, secs. 2, 6 and 9; Aetna Casualty & Surety Co. v. Corpus Christi Nat. Bank and Red Ball Motor Freight, Inc. v. Bailey, both supra.

Appellee lastly urges that the contract for release and payment of the chattel mortgage should be rescinded and it have recovery therefor on the basis of either a mutual mistake or a unilateral mistake in the formation of the contract.

In order for the judgment of the trial court to be affirmed on the theory that the verdict of the jury supports a recovery based on mutual mistake in the formation of the contract, it must be shown that the parties had formed the agreement in ignorance of, or under a mistake as to, a fact that was material and essential to an understanding of the transaction, and the question of fraud in the formation of the agreement is an independent consideration. Hart v. Daggett, 6 S.W.2d 143 (Tex.Civ. App., Fort Worth, 1928, no writ); Harding v. Garcia, 17 S.W.2d 859 (Tex.Civ. App., San Antonio, 1929, no writ). The mistake as to fact found by the jury on the part of Custom Leasing was that Custom Leasing, in effect, believed the Bank had a good note and chattel mortgage as against Gentry Construction Company. Though it is possible to conclude from the findings of the jury that it also found a mistake concerning the authority of Lyles in making the leaseback agreement, that could not possibly have been a mistake shared by the Bank in light of the finding of the jury in answer to special Issue No. 10. " * * * [F]or a mutual mistake of fact to constitute grounds for cancellation or recision of an instrument it must appear that the parties contracted under a mistake of fact that was material and essential to an understanding of the consequences of the agreement, and that the mistake did not relate to a mere incident thereto." Simpson v. Simpson, 387 S.W.2d 717, 719 (Tex.Civ. App., Eastland, 1965, no writ); Edwards v. Trinity & B.V.Ry. Co., 54 Tex.Civ.App. 334, 118 S.W. 572 (1909, error ref'd). The jury found that the representation made to appellee was material to the transaction, and, though the manner and definition used in submitting Special Issue No. 3 are attacked by appellant, there is ample evidence to support the finding of materiality. Though the mistake was about a material fact, it must have been one mutual to both parties, "each laboring under the same misconception," in order for rescission to be available to the complaining party. Hanover Ins. Co. v. Hoch, 469 S.W.2d 717 (Tex.Civ.App., Corpus Christi, 1971, writ ref'd n. r. e.); Newell v. Mosley, 469 S. W.2d 481 (Tex.Civ.App., Tyler, 1971, writ ref'd n. r. e.); Commercial Standard Insurance Co. v. White, 423 S.W.2d 427 (Tex.Civ.App., Amarillo, 1968, writ ref'd n. r. e.); Anderson Bros. Corp. v. O'Meara, 306 F.2d 672 (5th Cir. 1962). Was the mistake regarding Custom Leasing's beliefs concerning the validity of the chattel mortgage and note, then, a mutual one? It would be clearly contrary to the facts of the case and the findings of the jury to say that Texas Bank & Trust was laboring under the same mistake that seems to have beset Custom Leasing at the time of the transaction. In fact, the Bank still argues that it has a valid note, and does not concede that it is or ever was invalid. The validity of the note has never been judicially determined, as far as we are aware, and we make no such determi-

nation here. Even if it were found that the note was, in fact, invalid, the jury found that the validity of the note was knowingly misrepresented by Mr. Sudduth, thus the Bank and Custom Leasing held differing views at the time of the transaction in question and could not, therefore, have had the *same* misconception regarding the validity of the note and chattel mortgage. Where the mistake is unilateral rather than mutual, the mistake will not serve as a ground for rescinding the contract. Sun Oil Company v. Bennett, 125 Tex. 540, 84 S.W.2d 447 (Tex.1935); Earp v. First State Bank of Abilene, 356 S.W.2d 178 (Tex.Civ.App., Eastland, 1962, writ ref'd n. r. e.). We cannot affirm the judgment of the trial court on a theory that the findings of the jury sustain a recovery on the basis of a mutual mistake entitling appellee to rescission of the contract involved. See 10 Tex.Jur.2d, Cancellation of Instruments, sec. 35, and cases cited at n. 15, p. 355.

 Even if the mistake were unilateral, urges appellee, the contract should be rescinded and the judgment of the trial court should be affirmed. In order for a unilateral mistake to suffice as the basis of rescission, the mistake must have been one that would have been made regardless of any exercise of reasonable care, for usually failure to exercise reasonable care in the conduct of a transaction will preclude a party complaining of a unilateral mistake from seeking rescission. Benson v. Travelers Insurance Company, 464 S.W.2d 709 (Tex.Civ.App., Dallas, 1971, no writ); 10 Tex.Jur.2d, Cancellation of Instruments, sec. 37. Our Supreme Court has stated that the conditions precedent to allowing the equitable relief of rescission in a case involving unilateral mistake are (1) the mistake must be of such moment that to enforce the contract would be unconscionable; (2) the mistake must relate to a material feature of the contract; and (3) the mistake must have been made regardless of the exercise of ordinary care. James T. Taylor and Son, Inc. v. Arlington Ind.

School Dist., 160 Tex. 617, 335 S.W.2d 371 (Tex.1960). Clearly appellee established that the second of the three elements was satisfied in the case at bar. Whether enforcement of the contract would be unconscionable is strictly a subjective judgment to be made. In light of the jury's finding in response to Special Issue No. 17, we are prone to view whatever injustices would result from enforcement of the contract as being something short of unconscionable. More importantly, however, we find nothing in the jury's findings or the record that would tend to affirmatively establish that the mistake would have been made regardless of the exercise of reasonable care. The testimony regarding the single telephone conversation that gave rise to the mistake indicates that had just a few probing questions been asked by the representative of Custom Leasing, the complete situation regarding Gentry Construction Company's relationship with the Bank could have been discovered. The testimony reveals to the contrary that Mr. Sudduth was only asked what the "pay off" price of the chattel mortgage was. Whether such evidence supports the jury findings regarding misrepresentations by the Bank, a question raised on this appeal becomes unimportant since the findings of the jury as they are preclude a recovery on a theory of unilateral mistake.

 Where, as here, a party obtained every special issue requested and failed to get a favorable verdict on any theory correctly submitted, justice does not require a remand of the case for a new trial. "A remand under these circumstances would merely afford an opportunity for another 'bite at the apple.'" Owen v. Brown, 447 S.W.2d 883 at 886 (Tex.1969); National Life and Accident Insurance Company v. Blagg, 438 S.W.2d 905 (Tex.1969); Rule 434, Texas Rules of Civil Procedure. We can discover no theory, nor have we been directed to any, which would entitle Custom Leasing to any recovery based on the verdict returned by the jury in this case. Judgment, therefore, should have been en-

253

tered in favor of appellant on its motion therefore, directing that Custom Leasing take nothing by its suit. For the reasons stated herein, the judgment of the trial court is reversed and rendered in favor of appellant. Rules 300, 301 and 434, T.R.C.P.

Reversed and Rendered.